**BORG–WARNER CORPORATION,**
Plaintiff-Appellant,

v.

**YORK–SHIPLEY, INC.,** Defendant-Appellee.

No. 13211.

United States Court of Appeals Seventh Circuit.

July 26, 1961.

Rehearing Denied Sept. 13, 1961.

89

———————

Edward A. Haight, C. G. Stallings, Stuart S. Ball, John W. Hofeldt, Chicago, Ill. (Donald W. Banner, John T. Lanahan, Richard J. Flynn, Chicago, Ill., of counsel), for plaintiff-appellant.

Beverly W. Pattishall, W. Thomas Hofstetter, Chicago, Ill. (Woodson, Pattishall & Garner, Chicago, Ill., of counsel), for defendant-appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

The complaint herein contains counts for unfair competition, trademark infringement and trademark cancellation involving the word YORK used both as a trademark and a trade name. Plaintiff claims prior use of the name and trademark YORK for ice-making machinery, refrigeration apparatus, air-conditioning equipment and furnace and heating products. It alleges and offered proof that prior to 1923, the word YORK had acquired a secondary meaning identifying a wide range of products as those of plaintiff.

Defendants denied the allegations of the complaint, urged affimative defenses such as laches, unclean hands and narrow rights in YORK, and in addition, counterclaimed for trademark infringement and unfair competition. Defendant claims it commenced its use of the name YORK and trademark YORK for automatic oil burners for furnaces in 1922. This product often was referred to at the trial as oil conversion burners.

After a nine-day trial, the District Court dismissed the complaint. It entered judgment for the defendant on the counterclaim with damages of $2,280,000 plus an accounting of profits, and ordered an injunction against plaintiff using the word YORK in any way in connection with the selling of any furnace or heat-generating product.

York Manufacturing Company, a Pennsylvania partnership, was formed in 1874. The business was incorporated in 1895 as the York Manufacturing Company. The manufacturing facilities were located at York, Pennsylvania. In 1927, it merged with some of its distributors to form York Ice Machinery Company. In the late 1920s or early 1930s, the plaintiff's predecessor commenced the manufacturing of air-conditioning equipment. Commencing in 1938, it purchased and resold furnaces under the brand name YORK-AIRE and YORK, but abandoned this effort about 1941. The name of the company was changed in 1942 to York Corporation. In 1954, plaintiff's predecessor again undertook the sale of furnaces purchased from a furnace manufacturer. At least, some of these were marketed under the name YORK.

In 1956, plaintiff, Borg-Warner, acquired the business of York Corporation, and thereafter operated it as its "York Division." Prior to 1956, Borg-Warner had manufactured and sold furnace and heating products under the name "Ingersoll" and used the brands "Ingersoll" and "Airline."

The defendant, York-Shipley, Inc., is also located at York, Pennsylvania, as were its predecessors. A partnership known as York Oil Burner Company was organized in 1922, and was incorporated under the same name in 1928. Defendant, organized in 1926 as Thomas Shipley, Inc., acquired the stock of York Oil Burner Company in 1938. The York Oil Burner Company continued to operate as a subsidiary of defendant until 1943 when the name of defendant was changed to York-Shipley, Inc. It continued the business of the oil burner company under its new name.

Commencing in late 1922, defendant and its predecessors have manufactured, sold and serviced heating products. First, it was oil burners; since 1927, boiler-room units; and since 1933, warm-air furnaces. These have been for residential and commercial heating. In the early years of its operation, defendant's sales of such products were largely in Pennsylvania and nearby states. Later, its sales territory extended throughout various parts of the United States.

In 1943, plaintiff [1] registered the word YORK as a trademark. It registered this mark in various forms for refrigerating machinery and apparatus, and air-conditioning machinery and apparatus. None of its registrations was for furnace and heat-generating products.

In 1950, defendant registered as its trademark a design which included

Y
O
R
K
Y/H
H
E
A
T

surrounded by a border. In 1955, defendant registered a second similar design in which "GAS" was substituted for "Y/H."

Plaintiff and its predecessors, and defendant and its predecessors each have been doing business with headquarters in York, Pennsylvania, for more than 35 years prior to the commencement of this action. For many years, one of defendant's predecessors was located across the street from the main entrance to the general offices of plaintiff's predecessor. The parties and their predecessors had many dealings and transactions with each other.

In 1958, plaintiff completed the amalgamation of its Ingersoll furnace business into its York Division, and commenced the manufacture and sale of a line of York furnaces and heating products. In the same year, plaintiff announced to the trade and public in large advertisements, "York invades the heating market," and commenced a large scale intensive advertising campaign. Some of these advertisements apparently directed to plaintiff's distributors or dealers, stat-

---

1. The Term plaintiff includes its predecessors unless otherwise indicated.

ed: "Now take charge of the complete market for both heating and air-conditioning with York." Until shortly before it commenced this action, neither the plaintiff nor its predecessors had ever objected to defendant's use of YORK for its furnace and heating products business.

■ Plaintiff strongly urges that the record contains no proof or finding of fact that defendant had acquired a secondary meaning in the name YORK before plaintiff applied that name to its furnace and heating products. Plaintiff refers to Conclusion of Law No. 3 which states defendant's long priority of use of the name and trademark YORK for furnace and heating products entitles defendant to the exclusive use of the name and trademark for furnace and heating products. Plaintiff argues that prior use is not sufficient and secondary meaning is not mentioned. We agree that where a geographical or descriptive word is at issue, prior use alone is not sufficient.

Finding of Fact No. 27 states:

"As a result of the sales and advertising of YORK furnace and heating products and services by defendant and its predecessors since 1922, defendant's name and trademark YORK had been and is known, by the trade and public, as the means of identifying the furnace and heating products and services of defendant, and said name and trademark YORK has acquired a distinctiveness and secondary meaning signifying defendant and its furnace and heating products and services, and defendant and its predecessors have developed, and defendant now has, a valuable business and good will which is represented and symbolized by the name and trademark YORK."

Finding of Fact No. 38 is as follows:

"Plaintiff's advertising and use of YORK for furnace and heating products dilutes the distinctive quality of defendant's name and trademark YORK, pre-empts and irreparably damages defendant's good will there-in, and irreparably damages the secondary meaning thereof indicating defendant, its services and products."

■ Although Finding No. 38 is directed principally to the Illinois statute, we think this Finding, together with Finding No. 27 is a sufficient finding as to secondary meaning. We do not think it fatal to defendant's cause on its counterclaim that the words "secondary meaning" were not repeated in Conclusion of Law No. 3.

■ The name YORK is a geographical term. Generally speaking, trademarks in a geographical name are narrow in scope. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365. Neither plaintiff nor defendant may monopolize the use of YORK for all manner of products.

In French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 435, 24 S.Ct. 145, 146, 48 L.Ed. 247, the Supreme Court said:

"True the name is geographical; but geographical names often acquire a secondary signification * * which enables the owner to assert an exclusive right to such name as against every one not doing business within the same geographical limits; and even as against them, if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced, or of palming off the productions of one person as those of another."

■ Under the federal trademark registration statute (15 U.S.C.A. § 1051 et seq.) plaintiff's and defendant's registrations containing the name YORK are limited to "the goods or services specified in the certificate." 15 U.S.C.A. § 1057 (b).

■ Assuming plaintiff has made a sufficient showing to entitle it to the exclusive use of YORK as to ice-making and refrigeration machinery and apparatus, and also as to air-conditioning apparatus,

this does not determine the question as to its claim of exclusive use of YORK in connection with furnaces and heating products or equipment used in connection therewith.

Much of the difficulty in this case arises because of the claims of the parties that each is entitled to the exclusive use of YORK to designate "heat-generating products" or "heat-generating devices." The judgment of the District Court enjoins the plaintiff from manufacturing and selling any furnace or heat-generating products in connection with any business which includes the name YORK.

Before the incorporation of York Manufacturing Company in 1895, it was selling steam engines and boilers. Plaintiff now argues that such products were "heat-generating devices." These products were manufactured and sold by plaintiff's predecessor long prior to the date of defendant's manufacture and sale of oil conversion units in 1922. Also, plaintiff says that in the early 1930s, when its predecessor was manufacturing and selling air-conditioning systems for stores, theaters, hotels and other buildings, heating coils were included with some of these installations.

The District Court was entitled to consider various statements and advertisements of the plaintiff's predecessor which would indicate that the early references to "air-conditioning" referred to refrigeration and ice-making machinery. To illustrate, in February 1915, plaintiff's advertisements emphasized that it was devoted *exclusively* [2] to the manufacture of ice-making and refrigeration machines. In April 1920, the previous advertisement was changed slightly in wording to claim that York Manufacturing Company made "Ice Making and Refrigerating Machinery *Exclusively*." [2] This advertisement was used throughout 1920-1923. By 1925, the advertisement of plaintiff's predecessor proclaimed "The York Organization is the largest in the world, devoted *exclusively* [2] to the manufacture of Ice Making and Refrigerating Machinery." This claim was repeated as late as 1926. These advertisements belie plaintiff's present claim, that prior to 1923 a secondary meaning attached to its use of YORK as to heat-generating products or air-conditioning products as those terms are generally understood.

It is clear that plaintiff was the first to use the term YORK to refer to itself and its products; yet, in 1922-1923, plaintiff's principal products were ice-making and refrigerating machinery. The June 1922 issue of the house organ publication of plaintiff's predecessor stated, "The idea of the York Manufacturing Company was to devote itself entirely to the development of the highest type of refrigerating machine. * * *" This publication also listed plaintiff's 1922 products as various items and parts, "needed to equip a complete ice-making or refrigerating plant." It is important to note that no mention was made of any heating or air-conditioning products.

Under the related goods doctrine, plaintiff claims it should be protected as to YORK because the first user of a name has rights in that name even as to goods to which it had not applied the name or trademark. We do not think that in 1922-1923, conversion oil burners produced by defendant were so related in their common function as to be likely to cause confusion with the use by York Manufacturing Company of the term YORK on ice-making or refrigerating machinery. As hereinbefore stated, neither party was entitled to monopolize the geographical name YORK for all manner of products.

In Consumers Petroleum Company v. Consumers Co. of Illinois, 7 Cir., 169 F.2d 153, this Court decided a case wherein the facts were somewhat similar to the facts in the case at bar. The action was brought by Consumers Petroleum Company to enjoin the defendant from using the name "Consumers" in the business of marketing fuel oils. Plaintiff had been incorporated in 1925; defendant was incorporated in 1937 as a result of a re-

2. Emphasis supplied.

organization of a corporation established in 1913. Defendant's predecessor was authorized by its articles to deal in coal, coke, wood and other fuels of all kinds. However, in 1925, when plaintiff was incorporated, defendant was not selling fuel oils.

Defendant did start to sell fuel oil in 1927, but did so under various trade names and not its own. In 1938, however, defendant changed its method and commenced selling fuel oil on its own account. The parties agreed that no confusion existed in the mind of the public prior to 1938. Defendant argued that plaintiff was charged with the knowledge that defendant might, at any time, commence to sell fuel oil in addition to other fuels.

This Court first decided that the solid fuels sold by defendant were not in the same descriptive class as fuel oil. We held that even though defendant might decide to sell fuel oil as part of its corporate business, it did not follow that it had a right to engage in the sale of such oil under a name, even its own name, which had been previously put to use by a competitor in the sale of such commodity.

In Consumers, this Court stated, 169 F.2d at page 161:

"From these authorities and others which could be cited, it appears to be an established principle that a person or corporation can acquire a property right in a trade mark or trade name only by use of such mark or name in connection with goods of the same descriptive class. Applying this principle, we are of the view that the defendant acquired no property right in the trade name 'Consumers', as applied to fuel oil, for the reason that it did not use such name in that connection until 1938, and long prior to that time the trade name had been appropriated and used by the plaintiff in connection with such business. As a corollary, plaintiff in 1925 had a right to appropriate and use the name in connection with fuel oil."

■ Plaintiff argues that defendant has proved no sales of furnaces prior to 1938, whereas plaintiff's predecessor sold furnaces under the YORK trademark and name in 1937. There is credible evidence to prove plaintiff's sale of furnaces in 1937. However, there is also credible evidence that defendant sold warm air furnaces under the name YORK as early as 1933, and such evidence sustains the findings of the District Court in this respect.

In 1938, plaintiff's predecessor undertook the purchase and resale of some furnaces under the brands YORKAIRE and YORK. Edward R. Walsh, a man with heating experience, was employed to organize a furnace and heating department. In 1941, the venture of selling furnaces was abandoned. The heating equipment on hand was liquidated. An attempt was made to sell some of it to defendant. A former official of plaintiff's predecessor attributed the failure of the heating venture in the following manner: "Well, our marketing was through our own dealers and branch offices who were unfamiliar with the heating field. They didn't have any contact with the home builder and the residential market. * * And the dealers weren't too enthused about getting into this new field. * *" On the other hand, there were some dealers of plaintiff who were already handling established furnace lines including defendant's furnaces.

In 1943, when York Ice Machinery Corporation obtained its federal registration for YORK (Reg. No. 403,923), it disavowed any use of YORK for furnaces and heating products, and stated a furnace is for "heating purposes and is widely different from air-conditioning apparatus," and that "any possibility of confusion is non-existent."

■ The manufacture and sale by plaintiff of steam engines and boilers as well as heating coils in connection with some air-conditioning devices, under the name of YORK, and all prior to 1933, the date when defendant commenced the manufacture of warm air furnaces, does not

provide a sufficient basis for granting judgment to the plaintiff.

■ Another reason why plaintiff should not be granted the relief requested is that it is guilty of laches. Plaintiff's predecessor, although a much larger company, was fully aware that defendant's predecessor had applied the name YORK to its conversion burners which were used in furnaces since 1922. It knew that defendant's furnaces were advertised and sold under the name YORK since 1933. The manufacturing plants of plaintiff and defendant were located in close proximity to each other. Commencing as early as 1927, a number of plaintiff's high officers and officials caused defendant's oil conversion units to be installed in furnaces in their homes. Yet, the record does not disclose a single objection by any of plaintiff's predecessors to defendant's use of YORK over a period of at least thirty to thirty-five years.

The friendly and cordial relationship between plaintiff's and defendant's predecessors for several decades may have cooled somewhat in 1954 when defendant refused to sell out to its larger neighbor, but that does not change the applicable law.

This Court recently held in Seven-Up Company v. O-So-Grape Co., 283 F.2d 103, that prolonged and inexcusable laches bars injunctive relief in trademark cases. We stated, at page 106: "Laches does not necessarily constitute a conclusive and automatic bar to injunctive relief in trademark actions. However, in many instances, the delay may be so prolonged and inexcusable that it would be inequitable to permit the plaintiff to seek injunctive relief as to future activities." In the case at bar, we hold it would be inequitable for plaintiff to be awarded an injunction as to defendant's use of the word YORK on oil conversion units and furnaces.

We now pass to consideration of the judgment rendered in favor of the defendant on its counterclaim. It should be noted that defendant never registered the name YORK alone as to any of its products. In the 1950 registration, the words YORK and HEAT appear, the letters thereof arranged vertically. The words YORK and HEAT were separated by the letters Y/H. The design of the 1955 registration was the same excepting the word "GAS" was substituted for "Y/H."

Defendant's competitive conduct has not been entirely blameless. As an illustration, in 1936, when plaintiff had widely advertised "YORK leadership" in "air conditioning", defendant followed shortly thereafter with an advertisement asserting that "it remained for YORK to lead the industry" with its "Winter Air Conditioner."

Defendant's advertising copied terms and phrases used in plaintiff's advertising. Plaintiff had frequently advertised YORK quality. Thereafter, defendant advertised with reference to its products, "There is no substitute for YORK quality." Since 1931, plaintiff had consistently advertised "York Experience." Thereafter, defendant advertised as to its products, "York's Experience."

Nevertheless, the record supports the District Court's findings and holding that defendant has the exclusive right to use YORK on oil conversion burners and furnaces. Plaintiff's crash program of entering the heating market by the sale of furnaces under the name of YORK did cause damage to the defendant.

A complication, difficult of solution, is that in recent years the air-conditioning industry and the heating industry have come together to the extent that a unit is now manufactured which, in its capacity as a furnace, heats a home or other building in cool weather, while in warm weather, the same unit in its capacity as an air-conditioner, can cause cool air to pass through the ducts to the rooms of the building. Defendant has advertised that its furnaces are adapted to receive and utilize cooling units.

In the injunction below, plaintiff was enjoined from selling any "heat generating products" in connection with any business which includes the name YORK. As heretofore pointed out, "heat generating products" is a broad designation.

Plaintiff should not be restrained from using heating coils or units in its air-conditioning devices such as have previously been used by plaintiff or the air-conditioning industry. On the other hand, defendant should not be permitted to advertise its furnaces as air conditioners under the name YORK.

The provisions of the decree pertaining to damages cannot be sustained in the form entered in the District Court. The judgment provides plaintiff shall pay defendant $2,280,000 for the amount of damages sustained by defendant resulting from plaintiff's use of YORK for furnace and heating products. It also provides plaintiff shall account for and pay over to defendant all profits derived from plaintiff's sale of furnace and heating products under the name and trademark YORK.

It is not clear what part of the $2,280,000 allowed as damages is for defendant's lost profits. The theory upon which this sum was determined was based on lost profits from lost sales. Plaintiff insists an award of both damages plus plaintiff's profits permits a double or duplicate recovery and is improper. Century Distilling Co. v. Continental Distilling Corp., 3 Cir., 205 F.2d 140.

Defendant has the burden of proving by competent evidence what its actual damages were. On the other hand, damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684.

When defendant made its calculations as to damages, it gave no consideration as to the great proportionate increase in the sale of gas-fired furnaces. From 1948 to 1959, the period under consideration, sales of gas-fired units rapidly increased, while the sale of oil-fired furnaces remained relatively stable. In 1948, there were sold 143,075 oil units and 218,900 gas units. In 1958, there were 190,223 sales of oil units, but during the same period, 975,900 gas units were sold.

Without any evidence as to how many gas-fired units it sold after 1953, defendant says it is entitled to estimate its sales at 1.6% of the combined national oil and gas unit sales, because this is the share of the national market defendant held in the pre-infringement period. Defendant's calculations and the judgment below fail to make any allowance or adjustment for the fact that the national market in 1959 was a different market than it was in the pre-infringement period. It is not reasonable for defendant to assume it was entitled to 1.6% of a national market wherein the emphasis had shifted from a product pioneered by the defendant to a product to which it was a newcomer.

There is also in the record, evidence of several intervening causes of defendant's decline in business in 1953 attributable to defendant or to causes other than plaintiff. Consideration should be given to these factors.

As stated, the District Court was correct in awarding judgment in favor of the defendant on its counterclaim. However, the remedy devised was improper under the circumstances of this case. The injunction was too broad in its scope and should be revised to incorporate the suggestions previously considered in this opinion. The defendant's damages must be recomputed in the light of the shift in consumer demand from oil-fired to gas-fired furnaces, and any intervening causes responsible for the decline in defendant's business. The defendant is not entitled to an accounting to recover the plaintiff's profits. An accounting for an infringer's profits is an equitable remedy. The federal statute provides that the trademark owner's right to recover damages, profits and costs is "subject to the principles of equity." 15 U.S.C.A. § 1117. A finding of infringement does not, as a matter of right, entitle the owner to recover the infringer's profits. Williamson-Dickie Mfg. Co. v. Davis Mfg. Co., 3 Cir., 251 F.2d 924; Morgenstern Chemical Co. v. G. D. Searle & Co., 3 Cir., 253 F.2d 390.

We have previously considered the fact that the defendant's conduct has

not been entirely blameless. Under the circumstances of this case, we feel that complete justice will be accomplished by limiting defendant's remedy to an injunction and recovery of its actual damages. This case is, therefore, remanded to the District Court with instructions to revise the injunction and recompute the damages on a reasonable basis in the light of this opinion. Taxable attorney fees shall not be allowed.

Judgment for defendant is modified and the cause remanded for a recomputation of damages.