**FULLER PRODUCTS CO., Plaintiff-Appellee,**

v.

**The FULLER BRUSH COMPANY, Defendant-Appellant.**

**No. 13314.**

United States Court of Appeals
Seventh Circuit.

Feb. 13, 1962.

Rehearing Denied April 4, 1962.

W. Mahlon Dickerson, New York City, George N. Hibben, Chicago, Ill., Davis, Lindsey, Hibben & Noyes, Chicago, Ill., Saterlee, Browne, Cherbonnier, & Dickerson, New York City, John H. Reilly, Jr., New York City, Harold G. Johnson, Hartford, Conn., of counsel, for appellant

Theodore W. Miller, Fleetwood McCoy, Chicago, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Fuller Products Co., instituted action in the United States District Court to review the decision of the Trademark Trial and Appeal Board in Cancellation Proceedings brought by Fuller Products Co. against defendant, The Fuller Brush Company, (121 USPQ 327) which involved U. S. Patent Office Registration dated May 14, 1957, No. 645,-543 for vitamin food supplement.

The U. S. Patent Office Supplemental Register shows the trademark involved in the cancellation proceeding consists of "FULLER" in white script letters on a black oval background.

In the District Court, plaintiff also sought injunction restraining The Fuller Brush Company from infringement of plaintiff's own trademark "FULLER'S" on vitamin products, and prayed accounting for damages suffered.

Both plaintiff and defendant sell their products door-to-door. Each company is named for its founder whose surname was "Fuller."

The Trademark Trial and Appeal Board dismissed the petition for cancellation. In its Opinion, the Board stated that the record showed Fuller Products had used the marks "FULLER'S" and "FULLER'S QUALITY" for vitamins prior to The Fuller Brush Company's use of "FULLER" for vitamins. The Board also held that the marks "FULLER'S" and "FULLER" were, in legal contemplation, identical. However, the Board denied cancellation because it also found (1) that The Fuller Brush Company had been doing business under its trade name, "The Fuller Brush Company," since 1916; (2) that it was the record owner of numerous subsisting registrations disclosing its mark "FULLER" for products including brushes, brooms, mops, and the like; furniture, floor and metal polishes; glass, denture and all-purpose cleaners; polishing cloths; shaving cream; bath salts; hand lotions; shampoo; moth repellants and disinfectants; (3) that cosmetics and toiletries which bear names or marks other than "FULLER," are also labeled with The Fuller Brush Company's trade name, indicating The Fuller Brush Company to be the distributor, and are sold door-to-door by defendant's "Fuller Brush Men;" (4) that as early as December 13, 1924, The Fuller Brush Company extended its mark to vanity cases containing rouge and face powder; and (5) that The Fuller Brush Company was the prior user of "FULLER" in door-to-door selling of a wide variety of household products, and that use of "FULLER" for vitamins was a natural expansion of such business.

As used on its vitamin containers, The Fuller Brush Company's mark appears as "FULLER" in white script letters enclosed in a darker oval background with the words "Brush Co." in much smaller white block letters, also within the oval, immediately below the script "FULLER."

Fuller Products Co. was founded in 1936. It markets cosmetics, food products and household necessities under its mark "FULLER'S" or "FULLER'S QUALITY"; it holds registrations for spices, food flavoring compounds, hair dressings, shaving and skin lotions.

The District Judge found that plaintiff had continuously used its trademark on vitamins in substantial amounts since October, 1952, having previously used it continuously on food products and cosmetics in substantial amounts since 1936, and that its expansion in 1952, from food products and cosmetics to vitamins, was a natural expansion.

In The Fuller Brush Company's application for registration of its mark for vitamins, the first use of the mark for vitamins is alleged to have been on or about January 4, 1956, approximately four years after plaintiff's use. Defendant contends that the registration of its mark for cosmetics and toilet preparations filed August 15, 1950, had become incontestable when this cause arose, and that The Fuller Brush Company first sold a cosmetic in 1922 in a vanity case containing rouge and face powder.

There was a conflict of evidence as to whether the sale of the cosmetic case had been discontinued and whether or not The Fuller Brush Company had discontinued use of its mark on cosmetics for a period of nine or ten years, as the District Court found it had done. However, the District Judge did not view the use of the mark on cosmetics as controlling in his determination that, having in mind the descriptive properties of The Fuller Brush Company's items, even including cosmetics, the expansion of its business to vitamins was not a natural one. The District Court found that The Fuller Brush Company's mark was a celebrated one only in the field of brushes and related items, that its expansion to the unrelated item of vitamins was bound to cause confusion, and that expending greater sums in exploitation of its own mark as applied to vitamins, after plaintiff's prior use of its mark as applied to vitamins, could not in itself operate to give defendant any right to use its mark on vitamins.

The District Court found for plaintiff, holding its mark on vitamins to be valid and infringed, reversing the decision of the Trademark Trial and Appeal Board of the United States Patent Office in the Cancellation Proceeding; restraining use of defendant's mark, or any confusingly similar mark, on vitamins or goods of the same descriptive properties; awarding plaintiff the profits, gains and advantages which defendant may have derived from sales of vitamin products using "FULLER" as a source indication, and all damages sustained by plaintiff from the infringement; and referring the matter to a Master to secure accounting of profits and to assess damages.

The Fuller Brush Company appealed to this Court, stating the contested issues to be as follows:

1. Has the plaintiff's proof met the statutory requirements for cancellation from the Supplemental Register of the defendant's mark "Fuller" for vitamin food supplement; that is, has the plaintiff demonstrated that the defendant was not entitled to register the mark "Fuller" for vitamin food supplement at the time that the application for registration was made and that the plaintiff is or will be damaged by the registration of said mark? 15 U.S.C.A. § 1092.

2. Has the plaintiff established that it has exclusive rights in the surname "Fuller" as applied to vitamin food supplement?

3. Has the use by the defendant of the mark "Fuller" in conjunction with the words "Brush Co." infringed upon plaintiff's alleged common law rights in the marks "Fuller's" and "Fuller's Quality" upon vitamin food supplement?

4. Is the plaintiff entitled to recover from the defendant any and all damages which plaintiff has sustained by reason of defendant's sale of vitamin food supplement bearing or sold in packages or cartons bearing the word "Fuller"?

5. Is the plaintiff entitled to recover from the defendant profits, gains and advantages which the defendant has derived, received and made, or which may have accrued to the defendant, from its sale of vitamin food supplement in addition to any and all damages which plaintiff may have sustained?

Both the plaintiff and the defendant are using the true surnames of their founders. Defendant was the first, by many years, to use the name and to make the name famous for certain of its items. These items included no food products at the time that the plaintiff was organized. From its inception, plaintiff's trademark was applied to food items. Plaintiff was the first to apply its mark to vitamin products. We agree with the District Judge that prior use of a nondistinctive name mark affords no protection for expansion of trade to goods other than those of the same descriptive properties as the goods with which the mark has become identified by such prior use. Borg-Warner Corp. v. York-Shipley Inc., 7 Cir., 1961, 293 F.2d 88; Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 1948, 170 F. 2d 958, 961, cert. den. 336 U.S. 945, 69 S.Ct. 813, 93 L.Ed. 1102.

The Fuller Brush Company argues that plaintiff did not establish that its mark acquired a secondary meaning indicating plaintiff as the source of its vitamin products, and that the District Court made no finding of such secondary meaning. The Trial Court did not make a specific finding of a secondary meaning in plaintiff, in so many words. The Trial Judge did expressly negative a secondary meaning in The Fuller Brush Company's mark as to vitamin products. There was a finding of long and substantially exclusive use of plaintiff's mark on food products and a natural expansion to the prior use of its mark for vitamins. The District Court concluded that the defendant by spending greater sums in exploitation of its mark as applied to vitamins, after plaintiff's rights had accrued, could not thereby acquire any rights in its mark on vitamins. We agree with the contentions of the plaintiff that there runs through the findings and conclusions, as a whole, the clear implication that the Trial Court did find that plaintiff's mark had acquired a secondary meaning as to vitamins.

■■ The evidence supports the District Court's conclusion that the marks are confusingly similar, even where defendant has added the words "Brush Co." as these appear in very much smaller letters. Likelihood of confusion does exist here. Damage has been established by a showing that the registration on the Supplemental Register was inconsistent with an equal or superior right of plaintiff to use the same or a similar term.

In East Tennessee Packing Co. v. Armour & Co., 102 USPQ 425 (1954) the Patent Examiner in Chief found that registration on the Supplemental Register was not in order, without regard to whether either party actually had any trademark rights in the registered mark which was the equivalent of one in prior use by the petitioner for cancellation.

In a similar case, Independent Lock Co. v. Schlage Lock Co., 121 USPQ 609 (1959), the Commissioner of Patents held that damage was inferred where registration by Schlage of an outline of a key for key tags was inconsistent with Independent Lock Co's right to continue to manufacture similar key blanks and to picture them in catalogs and advertisements.

In Miller Shoe Co. v. Vaisey-Bristol Shoe Co., 116 USPQ 160 (1958) the Commissioner also held that a registration in the Supplemental Register should be cancelled on a showing of priority without regard to superiority of trademark rights.

■■ The Fuller Brush Company would distinguish these cases as not involving a finding, as was made in the instant Cancellation Proceedings by the Trademark Trial and Appeal Board, that The Fuller Brush Company's evidence rebutted the presumption that its vitamin product would be confused with that of plaintiff; and that, to the contrary, the purchasing public would associate Fuller Products Co. vitamins with those of The Fuller Brush Company. That conclusion, however, was based on the Board's finding that The Fuller Brush Company was the prior user of "FULLER" in the field of door-to-door selling of a wide variety of household products and that the use thereof for vitamins was but a natural expansion of such business. That finding was expressly found to be in error by the District Judge, who found, on clear and convincing evidence, that "expansion of trade" by The Fuller Brush Company to vitamins was not a natural one. On the record before us, this Court cannot rule that the District Court's finding was clearly erroneous. Federal Rules of Civil Procedure 52(a), 28 U.S.C.A. Insofar as the judgment of the District Court directs cancellation of The Fuller Brush Company's registration of its mark for vitamins and enjoins future infringement, the judgment of the District Court must be affirmed.

Plaintiff argues that defendant wilfully extended its mark to wholly different goods, well knowing the long established prior rights of Fuller Products Co., and that the District Court properly awarded an accounting of both profits

and damages. Plaintiff in this regard relies heavily on Hamilton-Brown Shoe Co. v. Wolf Bros., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916); Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 1941, 116 F.2d 708; and National Lead Co. v. Wolfe, 9 Cir., 1955, 223 F.2d 195. Unlike the acts of the infringers in the Hamilton and Aladdin cases, however, the acts of The Fuller Brush Company in the instant case have not been shown to be wantonly and intentionally fraudulent. In the National Lead case, unlike here, intentional misleading was demonstrated.

Plaintiff has the burden of proving by competent evidence what its actual damages were. The result may be only approximate, but some reasonable basis of computation must be used. Eastman Kodak Co. of New York v. Southern Photo Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684 (1927). An accounting for profits, however, is an equitable remedy subject to the principles of equity. 15 U.S.C.A. § 1117. On the record before us, we believe that equity dictates recovery of actual damages only. Borg-Warner Corp. v. York-Shipley, Inc., 7 Cir., 1961, 293 F.2d 88, 95, 96. To the extent that the judgment affords accounting for profits, it is reversed.

The judgment for plaintiff is modified as indicated above, and the cause is remanded for computation of plaintiff's actual damages.

Affirmed in part. Reversed in part, and remanded.

CASTLE, Circuit Judge (dissenting in part).

The record does not support a finding or conclusion that the defendant marked its vitamin food supplement with "Fuller" in an effort to trade on plaintiff's reputation. There is no evidence that plaintiff lost any sales by reason of defendant's use of "Fuller" on its vitamin food supplement; that plaintiff reduced its price because of sales by defendant; that plaintiff's reputation was harmed by defendant's sales; or that plaintiff made expenditures to prevent prospective customers from being misled. In my opinion there is no basis in the record for the award of any damages to plaintiff.

I would reverse the judgment in so far as it decrees that plaintiff is entitled to damages (either actual or measured by defendant's profits) and makes reference to a master for an accounting of profits and assessment of damages. I would affirm the judgment in all other respects.