560 F.2d 1325
 195 U.S.P.Q. 218, 1977-2 Trade Cases 61,582
 HELENE CURTIS INDUSTRIES, INC., Plaintiff-Appellant,
v.
CHURCH & DWIGHT CO., INC., and Allied Chemical Corporation,
Defendants-Appellees.
CHURCH & DWIGHT CO., INC., Plaintiff-Appellee,
v.
HELENE CURTIS INDUSTRIES, INC., and N.W. Ayer & Son,
Incorporated d/b/a N.W. Ayer ABH International,
Defendants-Appellants.
 No. 77-1138.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 12, 1977.
Decided Aug. 17, 1977.
As Amended Aug. 26, 1977.
Rehearing and Rehearing En Banc Denied, Sept. 30, 1977.
 
 1
 James W. Clement, R. Howard Goldsmith, Chicago, Ill., for plaintiff-appellant.
 
 
 2
 Rynn Berry, New York City, Daniel W. Vittum, Jr., Chicago, Ill., for defendants-appellees.
 
 
 3
 Before BAUER and WOOD, Circuit Judges, and JAMESON,* Senior District Judge.
 
 JAMESON, Senior District Judge:
 
 4
 Helene Curtis Industries, Inc. (Curtis) has appealed from a preliminary injunction order enjoining it from using the words "Arm in Arm" or any combination of words including Arm in Arm "as part of any trademark, brand name or other product or commercial identification in connection with the sale, offering for sale, distribution, advertising or promotion of any deodorant or antiperspirant product". The injunction arises from a suit brought by Church & Dwight Co., Inc. (Church & Dwight) charging Curtis with trademark infringement and unfair competition. Curtis counterclaimed, charging Church & Dwight with violation of the antitrust laws in attempting to monopolize the sale of products containing baking soda. Curtis subsequently filed a separate antitrust action, and the two cases were consolidated. Curtis contends that the evidence was insufficient to support the injunction and that it was unfairly precluded from establishing its antitrust counterclaims by a court order staying discovery on that issue. We affirm the order of the district court.
 
 Factual Background
 
 5
 Church & Dwight is a Delaware corporation which, under its registered trademark Arm & Hammer, has advertised and sold baking soda to the public for over 100 years. It also sells other household and personal care products under the Arm & Hammer trademark, including laundry detergent, washing soda, borax, oven cleaner and personal deodorant. Curtis is an Illinois corporation which sells various personal care products, including Arm in Arm deodorant with baking soda.
 
 
 6
 Based on an idea derived from Arm & Hammer television commercials, Curtis developed and began test-marketing Arm in Arm with Baking Soda deodorant in three cities on April 28, 1975. In early May, 1975, the initial marketing of the Curtis deodorant came to the attention of Church & Dwight, which was preparing for the marketing of its own baking soda deodorant under the Arm & Hammer trademark.[1] Church & Dwight immediately protested to Curtis against Curtis' use of the Arm in Arm brand name and packaging.[2] Following Curtis' rejection of its protests, Church & Dwight on May 16, 1975, commenced this action against Curtis in the United States District Court in Rochester, New York.
 
 
 7
 Curtis answered on July 3, 1975, asserting an affirmative defense and counterclaim predicated on allegations that Church had attempted to monopolize the sale of products containing baking soda. On August 27, 1975, Church & Dwight moved, pursuant to F.R.Civ.P. 42(b), for a separation for trial of the antitrust issues raised by the answer and counterclaim from the trademark issues raised in its complaint. Following a hearing on the motion September 22, 1975, the New York district court on February 25, 1976, entered an order separating trial of the antitrust and trademark issues and staying all proceedings on the antitrust issues pending resolution of the trademark issues. On April 15, 1976, the court denied Curtis' motion for certification under 28 U.S.C. § 1292(b).
 
 
 8
 Despite the pendency of the lawsuit, in July, 1975, Curtis expanded from the three-city test to national marketing of Arm in Arm, reaching national distribution in October, 1975. Curtis' decision to expand its marketing program was announced by its division president, who stated:
 
 
 9
 "As you probably heard, about six weeks ago, Arm and Hammer entered a suit against us in an effort to slow us down with our introduction."
 
 
 10
 " . . . We are going ahead faster than ever before. We are so unconcerned with the suit that we are ready to offer a letter of indemnity to any account who wants it. As far as you are concerned, you need have no worry or fear regarding this at all." (Finding of Fact 52)
 
 
 11
 In April, 1976, Curtis further expanded the Arm in Arm line with the introduction of a roll-on deodorant, nationally advertised and distributed in June, 1976.
 
 
 12
 On June 10, 1976, Church & Dwight filed a motion for preliminary injunction. On June 15, 1976, Curtis filed a petition seeking a writ of mandamus directing the district court to vacate its Rule 42(b) order. The petition was dismissed by the Court of Appeals for the Second Circuit on July 8, 1976.
 
 
 13
 On June 16, 1976, Curtis filed an antitrust action against Church & Dwight in the court below, repeating the allegations made in its answer and counterclaim in the New York action as well as adding several new ones. On the same date Curtis filed a motion to transfer the New York action to Illinois pursuant to 28 U.S.C. § 1404(a). The New York court granted the motion on November 17, 1976, and the case, together with the undecided motion for preliminary injunction, was transferred to Chicago. Upon learning of the Rule 42(b) order, the Illinois district court stayed the antitrust action filed by Curtis. Curtis then moved to vacate the Rule 42(b) order; the motion is still pending.
 
 
 14
 On January 24, 1977, the district court entered its Preliminary Injunction Order against Curtis, to become effective on April 1, 1977. The order was accompanied by detailed findings of fact[3] and conclusions of law. The court concluded, inter alia :In view of the irreparable injury that will be suffered by plaintiff if defendant's trademark infringement and unfair competition are not immediately enjoined, the lack of dispute as to the basic facts, and the showing of the probable right of both plaintiff and the public under the law to relief against continuation of defendant Curtis' misleading, confusing and deceptive acts, injunctive relief pendente lite should be granted.
 
 
 15
 Curtis filed a notice of appeal on January 27, 1977. On February 11, 1977 this court stayed the preliminary injunction until further order of this court.
 
 Propriety of Preliminary Injunction
 
 16
 The decision to grant or deny a preliminary injunction "depends upon a balancing of several factors, including the likelihood of success on the merits, the lack of adequate remedy at law, the lack of irreparable harm if the injunction is not issued and a comparison of the relative hardships imposed on the parties". Banks v. Trainor, 525 F.2d 837, 841 (7 Cir. 1975). "In reviewing the district court's assessment of these factors, the Court of Appeals should not substitute its judgment for that of the lower court unless it is convinced that the district court abused its discretion." Washington v. Walker, 529 F.2d 1062, 1065 (7 Cir. 1976), citing, inter alia, Banks v. Trainor, supra at 841. We shall consider in turn each of the factors to be weighed in determining the propriety of the injunction.
 
 
 17
 (1) Likelihood of Success on the Merits
 
 
 18
 Under the Federal Trademark Statute (the Lanham Act), the test of liability for infringement is whether the infringer's "use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1). This court has recognized that:
 
 
 19
 A third party, the consuming public, is present and its interests are paramount. Hence infringement is found when the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public. James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 274 (7 Cir. 1976).
 
 
 20
 In determining "likelihood of confusion" several factors are important: "the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another". Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, 433 F.2d 686, 705 (2 Cir. 1970), cert. denied, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).
 
 
 21
 The district court's findings of fact reveal numerous factors showing a likelihood of public confusion of the Arm in Arm trademark with that of Arm & Hammer. Arm in Arm employs packaging with a cream yellow background, similar to that used on Arm & Hammer Baking Soda packages, which was chosen because "the cream background packages are most suggestive of baking soda, the unique ingredient in Arm in Arm". (Finding 23.) In questionnaires used in Curtis' initial marketing research, numerous persons stated that the Arm in Arm packaging reminded them of "the yellow background design of the Baking Soda package (Arm & Hammer)". (Finding 24.) On the basis of its marketing research, Curtis concluded on February 7, 1975, that "The name Arm in Arm is a very acceptable name for the test product. The name readily produces such images as: * * * Arm and Hammer Baking Soda." (Finding 22.)
 
 
 22
 Additionally, the district court detailed multiple examples of actual public confusion. While the test of infringement is the likelihood of confusion, which can be proven without any evidence of actual confusion, such evidence, if available, is entitled to substantial weight. Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 612 (7 Cir. 1965). Curtis' data compiledfrom tests of consumer reactions to Arm in Arm television commercials revealed numerous examples of actual confusion. In one survey of three Arm in Arm commercials, 290 out of 998 consumers interviewed who saw the commercials thought Arm in Arm was made by Arm & Hammer while only 276 believed it was made by Curtis. (Finding 46.) Church & Dwight submitted, in conjunction with its motion for preliminary injunction, 39 letters received from consumers who thought it manufactured Arm in Arm deodorant. Church & Dwight also submitted 93 communications from 82 different retailers and clearing houses received from January 21, 1976 through June 8, 1976, tendering Arm in Arm consumer discount coupons for payment in the mistaken belief that Church & Dwight was the manufacturer of the product. (Finding 50).
 
 
 23
 The court found that "Curtis purposefully chose a confusingly similar and infringing trademark for the reason that Arm in Arm readily produces in consumers' minds the image of Arm & Hammer Baking Soda". (Finding 67.) Curtis' continuation and expansion of its Arm in Arm marketing activities, in spite of evidence of confusion revealed by its own research, made clear that "Curtis intended to derive benefit from confusion caused by Arm in Arm to take advantage of goodwill previously established by plaintiff for its Arm & Hammer products". (Finding 68.)
 
 
 24
 From these findings,[4] we must conclude, as did the district court, that Church & Dwight is likely to succeed on the merits of its infringement claim. The evidence clearly establishes a likelihood of public confusion as to the source of origin of Arm in Arm deodorant, which is the "keystone" for injunctive relief. Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, supra, 433 F.2d at 705.
 
 
 25
 Curtis, however, raises several legal defenses to the trademark infringement claim which it argues are sufficient to preclude the granting of a preliminary injunction. While not actually challenging the findings of a likelihood of confusion, Curtis contends that there is no evidence to show the cause of the confusion. Curtis argues that any confusion which may be shown is caused not by its selection of the Arm in Arm trademark, but by Church & Dwight's misuse of its Arm & Hammer trademark in violation of the antitrust laws. However, as will be discussed in greater detail infra, Curtis' antitrust claims are remote and ill-founded. It is clear from the record that public confusion is the result of Curtis' choice of a trademark infringingly similar to Arm & Hammer.
 
 
 26
 Curtis next contends that it cannot be found to be an infringer because it was the first user of a trademark employing the word "arm" in the area of deodorants, and there was no showing that the deodorant market was a " natural area of expansion" for Church & Dwight's trademark. It is well settled, however, that a trademark is entitled to protection against infringement by adverse trademarks, even on noncompetitive products, if there is a likelihood that consumers will believe that the later mark is "related to or connected with" the existing trademark. Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 153 (9 Cir. 1963). As this court stated in California Fruit Growers Exchange v. Windsor Beverages, Ltd., 118 F.2d 149, 152-153 (7 Cir. 1941): "(I)t is now settled in this country that a trade-mark protects the owner against not only its use upon the articles to which he has applied it but also upon such other articles as might naturally or reasonably be supposed to come from him." Curtis' defenses of first use and natural area of expansion are inapplicable in the factual context of this case. Moreover, Curtis' reliance on the natural area of expansion defense is misplaced in light of the district court's findings that "(f)or more than 50 years plaintiff and its predecessors have advertised and promoted Arm & Hammer Baking Soda for use as a deodorant and for other purposes which utilize the product's deodorizing properties". (Finding 14.) See Fuller Products Co. v. Fuller Brush Co., 299 F.2d 772 (7 Cir. 1962).
 
 
 27
 Curtis also contends that it selected its Arm in Arm trademark in good faith, stating that it was chosen because it prompts images of a young man and woman "going together" and is likely to remind prospective purchasers of a product for underarm use. This equitable argument is contrary to the district court's finding, which is amply supported by the record, that Curtis "purposefully chose a confusingly similar and infringing trademark". (Finding 67.)
 
 
 28
 Finally, Curtis argues that the trademark Arm & Hammer has become generic to baking soda and is no longer entitled to trademark protection.[5] "A mark is not generic merely because it has some significance to the public as an indication of the nature or class of an article. * * * In order to become generic the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." Feathercombs, Inc. v. Solo Products Corp.,306 F.2d 251, 256 (2 Cir. 1962), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962); accord, Gilson, Trademark Protection and Practice, § 2.02(1) at 2-11 to 2-14 (1976). The record does not reveal that the trademark Arm & Hammer has become the generic name for baking soda, but merely shows that the trademark strongly identifies the manufacturer of baking soda products. Compare Bayer Co., Inc. v. United Drug Co., 272 F. 505 (S.D.N.Y.1921) (aspirin found to be the generic name for acetyl salicylic acid) and King-Seeley Thermos Co. v. Aladdin Industries, Inc., 321 F.2d 577 (2 Cir. 1963) (thermos found to be the generic name for vacuum bottle). As noted by appellee, Arm & Hammer refers to a variety of products including laundry detergent, oven cleaner, deodorant, borax and baking soda. We conclude from the record that Arm & Hammer, while being closely associated with baking soda, has not become its generic name. Cf. Enders Razor Co. v. Christy Co., 85 F.2d 195 (6 Cir. 1936).
 
 
 29
 We conclude that the defenses asserted by Curtis are insufficient to negate the likelihood of Church & Dwight prevailing on the merits at trial.
 
 
 30
 (2) Inadequate Remedy at Law
 
 
 31
 While this factor was not addressed by the parties, it was considered by the court in its finding that "Defendant Curtis' use of Arm in Arm is causing injury to the Arm & Hammer trademark of a sort that cannot be accurately measured or adequately compensated in money damages". (Finding 59.)
 
 
 32
 (3) Irreparable Injury
 
 
 33
 The district court found that "Defendant Curtis' use of Arm in Arm in connection with its marketing of Baking Soda deodorant products is likely to dilute and diminish the distinctive quality of the Arm & Hammer trademarks. . . ." (Finding 61) and that "Plaintiff is suffering irreparable injury as a result of defendant Curtis' use of the trademark Arm in Arm." (Finding 62). Curtis contends that these findings are not adequately supported by the record and that there was no showing of irreparable injury.
 
 
 34
 Church & Dwight contends that it has lost over six million dollars on its Arm & Hammer deodorant since its introduction, making it "barely viable" in the antiperspirant market. Moreover, the damage to the goodwill and prominence of the Arm & Hammer trademark through public confusion of it with the Arm in Arm trademark is, in itself, an irreparable injury. As stated by the Second Circuit in Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (1971):
 
 
 35
 Where there is, then, such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows. While an injured plaintiff would be entitled to recover the profits on the infringing items, this is often difficult to determine; moreover, a defendant may have failed to earn profits because of the poor quality of its product or its own inefficiency. Indeed, confusion may cause purchasers to refrain from buying either product and to turn to those of other competitors.
 
 
 36
 We conclude that a sufficient showing of irreparable injury to Church & Dwight is made on the record.
 
 
 37
 (4) Relative Hardship of the Parties
 
 
 38
 Curtis contends that it will be severely injured if the preliminary injunction is upheld since it has invested a great deal of money in advertising and has over one million dollars in inventory. Further, Curtis will lose its Arm in Arm trademark for all time.
 
 
 39
 These arguments merit little equitable consideration in light of Curtis' willful use of an infringing trademark. As the court in Colgate-Palmolive Co. v. North American Chemical Corp., 238 F.Supp. 81, 87 (S.D.N.Y.1964), stated:
 
 
 40
 (T)he courts will not shy away from issuing such (preliminary injunctive) relief where to do so would be to aid a second comer who has sought to trade upon the efforts and good will of the first comer. As the Court of Appeals for this Circuit expressed the point thirty years ago: "Advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed." My-T Fine Corp. v. Samuels, 69 F.2d 76, 78 (2d Cir. 1934).
 
 The Colgate-Palmolive court continued:
 
 41
 . . . The difficulty is enhanced by the fact that defendant continued and indeed expanded its conduct after notice from plaintiff at a time when defendant could reasonably have minimized its efforts and expenses and when no good will of major value had attached to its activities.
 
 
 42
 The same situation is present here. Curtis deliberately proceeded with its marketing plans, after being notified by Church & Dwight that Curtis was infringing the Arm & Hammer trademark, in an attempt to "preempt the baking soda idea" and thereby "carve out a $10 million a year share of the deodorant market 'before competition has a chance to react'." (Finding 36.) This notice was received by Curtis in the early stages of its test-making program before any "good will of major value had attached to its activities". Curtis not only ignored these early warnings, but increased its promotion of Arm in Arm deodorant after entry of the district court's preliminary injunction order. As noted supra, the order was entered January 24, 1977, but was not to become effective until April 1, 1977.[6] In spite of the court's instruction not to "continue to promote this product", Curtis on January 27, 1977 initiated a new "one free with one" promotion, offering Arm in Arm products at 50% discount. Upon a Rule to Show Cause why Curtis should not be held in contempt of the preliminary injunction, the court found that the new promotion "in fact violates the spirit of the order", but nonetheless vacated the Rule to Show Cause because of an ambiguity as to the injunction's effective date.[7]
 
 
 43
 Curtis deliberately proceeded with the marketing and promotion of its deodorant under the Arm in Arm trademark in spite of warnings that the mark was infringing and in spite of an injunctive order and agreement to the contrary. In doing so, it proceeded at its own risk and cannot now be heard to complain that it will be severely injured if the preliminary injunction is upheld. We conclude that the injury to Church & Dwight caused by Curtis' continuing use of the Arm in Arm trademark far outweighs any injury to Curtis, which is largely the result of Curtis' own conduct, flowing from an injunction prohibiting use of the trademark.
 
 
 44
 (5) Laches
 
 
 45
 Church & Dwight filed its motion for preliminary injunction nearly thirteen months after filing its complaint. Curtis contends that entry of the injunction should have been barred by laches, and that the court's findings on this point are erroneous. Curtis argued that it was "mousetrapped" by Church & Dwight's delay and its "initial willingness to wait to let this matter be decided after a full trial by a jury".
 
 
 46
 Church & Dwight contends that it diligently pursued enforcement of its rights and filed the motion for preliminary injunction promptly after obtaining documents through discovery, resisted by Curtis, revealing Curtis' intent to trade on the goodwill of Arm & Hammer and data showing the confusion caused by use of the Arm in Arm trademark.
 
 
 47
 It is clear that "mere passage of time cannot constitute laches". Friend v. H. A. Friend and Company, 416 F.2d 526, 533 (9 Cir. 1969). "A district court in its discretion, however, may find laches if the passing of time can be shown to have lulled the plaintiff into a false sense of security, and the defendant acts in reliance thereon". Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, supra, 433 F.2d at 704.
 
 
 48
 In this case, the district court found that Curtis expanded its marketing activities for Arm in Arm from its initial three-city test to a national scale "in defiance of plaintiff's protests and with knowledge of the confusion" caused by Arm in Arm. The court concluded: "Defendant Curtis cannot contend that any expenditures in connection with such expansion were made in reliance on plaintiff's failure to advise Curtis that plaintiff's rights in the Arm & Hammer trademark were being violated." (Finding 52.) The court also found that "(A)t the outset of the case, the short time and limited scope of Arm in Arm sales had not been sufficient to develop the evidence of actual confusion presented to the court on this motion."[8] (Finding 51.)
 
 
 49
 We must agree with the district court's finding that "There has been no laches that would preclude plaintiff from obtaining preliminary injunctive relief" (Finding 55) and its conclusion that "The defense of laches affords no justification for defendant Curtis' continuing deceptive conduct". (Conclusion of Law 3.) There is no evidence that Curtis was lulled into a false sense of security or that it acted in reliance on the delay of Church & Dwight. To the contrary, the record shows that Curtis acted with knowledge of the probable consequences.
 
 
 50
 Overall, we conclude that the preliminary injunction was properly entered in the sound discretion of the district court.
 
 Rule 42(b) Order
 
 51
 Curtis challenges as clearly erroneous Conclusion of Law 4 which reads:
 
 
 52
 "None of the evidence before the court shows that confusion involving Arm In Arm and Arm & Hammer has been caused or is likely to be caused by any monopolization or attempted monopolization by plaintiff of Baking Soda or products containing Baking Soda."
 
 
 53
 Curtis contends that it was unfairly and erroneously precluded from establishing its antitrust defense by the New York district court's order, rendered pursuant to F.R.Civ.P. 42(b), which provided "that there shall be a separate trial of the issues raised by the defendant's affirmative defense and counter claims after the trial of the issues raised by the complaint. All proceedings including discovery on the issues raised by defendant's affirmative defense and counter claims are stayed until the issues raised by the complaint have been tried and decided."[9]
 
 
 54
 Curtis argues that the misuse of a trademark in violation of antitrust laws is a complete defense to a trademark infringement suit, and that Church & Dwight's "antitrust violations in the consumer market for baking soda have converted its trademark Arm & Hammer into a powerful anti-competitive device". It is further argued that the severance order deprived Curtis of an important defense, thereby depriving it of due process of law, and that Curtis was denied its right to trial by jury. Church & Dwight replies that the Rule 42(b) order is not before the court on this appeal and that, in any case, antitrust violations are not a general defense to a trademark infringement claim.
 
 
 55
 It is settled that an order issued pursuant to Rule 42(b) separating issues for trial is an unappealable interlocutory order. Travelers Indemnity Co. v. Miller Mfg. Co., 276 F.2d 955 (6 Cir. 1960). "Such orders are appealable only by certification and permission under 28 U.S.C. § 1292(b)",[10] 9 Moore's Federal Practice P 110.13(8), or if they fall within the " collateral order" doctrine established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Garber v. Randell, 477 F.2d 711, 715 (2 Cir. 1973).
 
 
 56
 It is also settled, however, that when an interlocutory appeal is taken, as from an order granting an injunction, the appellate court may consider "other orders, although interlocutory and in themselves nonappealable, and such questions as are basic to and underlie the order supporting the appeal". 9 Moore's Federal Practice P 110.25(1), p. 270. But, "where an interlocutory order is properly appealed and review is sought of an incidental discretionary order, the appellate court should not review the discretionary order where there is no showing of an abuse of discretion". Id, p. 272.
 
 
 57
 We find no abuse of discretion in the order entered by Judge Burke in the Western District of New York, which reads in pertinent part:
 
 
 58
 Plaintiff has demanded a jury trial of the issues raised by the complaint and answer. The trademark issues differ significantly from the antitrust issues. The witnesses, documentary proof and discovery on the respective issues would be different both in character and in scope. Prior determination of the trademark issues could obviate the need for ever trying the antitrust issues.
 
 
 59
 There is no merit to defendants' contention that trying the trademark issue first, with a stay of the antitrust issues, would deprive defendants of their day in court on the antitrust defense. The antitrust defense is based on the question whether plaintiff acted in good faith in bringing this suit in asserting its trademarks against defendants and others. A separate trial of the trademark issues will afford the defendants a full opportunity to be heard on the antitrust defense. If the defendants are successful in the trial of the trademark issues in showing that the plaintiff's bad faith assertion of its trademark rights, defendants could then pursue the remaining aspects of the antitrust suit. * * *As Judge Mansfield recognized in Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, 298 F.Supp. 1309, 1312 (S.D.N.Y.1969), aff'd, 433 F.2d 686 (2 Cir. 1970), cert. denied, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971), the defense of antitrust misuse is largely "available to defeat the conclusive evidentiary force that would otherwise attach to a trademark certificate under the (Lanham) Act". The defense is made applicable by § 33(b)(7) of the Act, 15 U.S.C. § 1115(b)(7), which provides in pertinent part:
 
 
 60
 "The certificate (of trademark registration) shall be conclusive evidence of the registrant's exclusive right to use * * * except when one of the following defenses or defects is established:
 
 
 61
 "(7) That the mark has been or is being used to violate the antitrust laws of the United States."
 
 
 62
 Judge Mansfield in Zeiss quoted at length from Representative Lanham's explanation of the Senate-House Conference Report, including the following:
 
 
 63
 "(P)roof of violation of the antitrust laws of the United States by a registrant in the use of his mark does not under this act destroy the validity of or the right of the registrant to continue to use the mark, but it places on him a burden of proof in the event of litigation which others do not have to carry, by diluting the weight the court is to give to his certificate of registration as evidence of ownership and the right to use the mark." (92 Cong.Rec. 7524) 298 F.Supp. at 1312.
 
 
 64
 Apart from the antitrust defense under § 33(b)(7), Judge Mansfield in Zeiss recognized the equity power of a court to deny enforcement of a trademark on the part of one who has used that trademark in violation of the antitrust laws. He recognized also that "the forces favoring exercise of such power in a trademark suit are much weaker than those calling for its exercise in patent litigation",[11] and that "it is significant that in almost every instance where the antitrust misuse of a trademark has been raised as a defense, it has been rejected". 298 F.Supp. at 1314.[12]
 
 
 65
 Both parties rely upon language in Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366 (7 Cir. 1976), where, as here, the antitrust issues raised as an affirmative defense by the defendants were severed for separate trial pursuant to Rule 42(b). The court recognized that these issues were "not involved" in the appeal. In Union Carbide, however, the district court had entered a final judgment in favor of the defendants, finding no infringement and that the plaintiff's trademark was invalid. In reversing and remanding for trial, this court held that the trademark was valid, but concluded that "the antitrust affirmative defense was sufficiently broad as to include a claim for equitable denial of enforcement of the trademarks on the basis of their claimed use in the violation of the antitrust laws". After referring with approval to Judge Mansfield's comments in Zeiss, quoted supra, it was held that under the "posture of this case as it has reached us, we will not deny the defendants the opportunity to take up the burden of proof".
 
 
 66
 The posture of this case is significantly different. It involves a preliminary injunction and the appealability of an incidental discretionary order, rather than a final judgment determining the validity of the trademark. Moreover, "an essential element of the antitrust misuse defense in a trademark case is proof that the mark itself has been the basic and fundamental vehicle required and used to accomplish the violation". Zeiss, supra, 298 F.Supp. at 1315; see, e. g., Phi Delta Theta Fraternity v. J. A. Buchroeder & Co., 251 F.Supp. 968 (W.D.Mo.1966). While no proof has yet been adduced by Curtis due to the order it challenges, the allegations of its affirmative defense concern marketing violations involving the baking soda market, rather than misuse of the Arm & Hammer trademark itself.[13] The district court considered the antitrust counterclaim and concluded that the plaintiff had made a case for a preliminary injunction "independently of the antitrust counterclaim, and despite it".[14]
 
 
 67
 In light of the limited applicability and viability of antitrust defenses to trademark infringement claims and in light of the questionable legal sufficiency of Curtis' allegations of antitrust violations, we find the antitrust defense to be remote and unrelated to the issues on this appeal. We conclude that the Rule 42(b) order is not concerned with such basic and underlying issues raised on this appeal that we may consider its propriety.
 
 
 68
 In addition, this appeal was taken before the district court ruled on the motion to vacate the Rule 42(b) order. The district court will have a further opportunity to consider the propriety of the order in the light of the pleadings and this opinion. We find no abuse of discretion in the entry of the Rule 42(b) order and accordingly it is not reviewable on this appeal. There was ample evidence before the district court to warrant the issuance of the temporary injunction.
 
 
 69
 The order of the district court is affirmed.
 
 
 
 *
 The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation
 
 
 [1]
 Church & Dwight began selling its deodorant in late June and early July, 1975, reaching national distribution in October, 1975
 
 
 [2]
 Arm in Arm deodorant packaging employed a yellow and red color combination similar to that used on Arm & Hammer Baking Soda
 
 
 [3]
 These findings will be discussed infra in connection with the contentions of the parties
 
 
 [4]
 While Curtis challenges these findings as "clearly erroneous", it makes no argument in support of its contention. In any case, we find no basis in the record for the assertion
 
 
 [5]
 15 U.S.C. § 1064(c) provides for cancellation of a trademark registration "if the registered mark becomes the common descriptive name of an article . . . ."
 
 
 [6]
 The effective date of the injunction was delayed as an accommodation to Curtis to give it time to develop a new name and the artwork and labeling to accompany it, and to allow it to complete newspaper and magazine advertisements and promotional programs, to which Curtis was irrevocably committed
 
 
 [7]
 At the hearing the district court noted the probable reason for Curtis' conduct
 "(A)s I commented to the last witness, the statement in the affidavit, in order to continue the level of sales, is a rather revealing condition, it suggests that Helene Curtis somehow felt that they had some right, despite the finding of infringement and unfair competition, to maintain the level of sales until they could get to the Court of Appeals or get the order somehow reversed a reasonable and fair expectation in terms of their own attitude, but not one that was valid during the pendency of the injunctive order."
 
 
 [8]
 Church & Dwight's efforts to compile the information supportive of its motion were resisted by Curtis, as found by the court:
 "Defendants Curtis and Ayer have not been prompt in responding to plaintiff's efforts to obtain evidence of confusion recorded in Curtis' marketing research data."
 
 
 [9]
 As stated supra, the affirmative defense and counterclaims of Curtis were based on alleged antitrust violations flowing from abusive use of the Arm & Hammer trademark
 
 
 [10]
 As noted supra, the court denied Curtis' motion for certification of an order for an appeal pursuant to 28 U.S.C. § 1292(b), whereupon Curtis sought mandamus in the Court of Appeals for the Second Circuit, which was denied. Curtis' petition for certiorari was dismissed by the Supreme Court, pursuant to its Rule 60, after the case was transferred to the court below
 
 
 [11]
 "The distinction arises from the fact that a patent represents a grant of a limited monopoly that in most instances would, absent its legalization by Congress, constitute an unlawful restraint of trade. . . . A valid trademark, on the other hand, merely enables the owner to bar others from use of the mark, as distinguished from competitive manufacture and sale of identical goods bearing another mark, or even no mark at all, since the purpose of trademark enforcement is to avoid public confusion that might result from imitation of similar unfair competitive practices rather than to authorize restraints upon trade." Zeiss, supra, 298 F.Supp. at 1314
 
 
 [12]
 Judge Burke in his order relied on these excerpts from Zeiss, noting that the Court of Appeals had approved the district court's rejection of the antitrust defense for the reasons set forth in Judge Mansfield's opinion
 
 
 [13]
 In the New York action in which Judge Burke entered the severance order, the antitrust allegations related to bad faith in bringing the action. In the action in the court below this was broadened to include monopolization of the consumer baking soda market. As Judge McGarr noted at the hearing, Curtis "could market a baking soda deodorant, advertise the baking soda aspect of it all they want, as long as they eliminate the problem that arises basically from the use of the word 'Arm' "
 
 
 [14]
 In responding to the antitrust argument of Curtis at the hearing, Judge McGarr said:
 "I've considered that, you made that argument in the pleadings that I have, and it's my conclusion that the antitrust counterclaim and the discovery in conjunction with it and the length of time that it would take does not have sufficient merit or relevance to the present issue to warrant my barring a preliminary injunction for the many months that it would take in order to develop and try that.
 "I think the case for the preliminary injunction has been made out, and I think it's been made out adequately, independently of the antitrust counterclaim, and despite it."