**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1461**

RXD MEDIA, LLC,

        Plaintiff - Appellant,

    v.

IP APPLICATION DEVELOPMENT LLC; APPLE, INC.,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:18-cv-00486-LO-TCB)

Argued: September 11, 2020                Decided: January 21, 2021

Before GREGORY, Chief Judge, and KEENAN and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Chief Judge Gregory and Judge Floyd joined.

**ARGUED:** Cecil E. Key, Jr., DIMURO GINSBERG, P.C.-DGKEYIP GROUP, Alexandria, Virginia, for Appellant. Dale Margaret Cendali, KIRKLAND & ELLIS, LLP, New York, New York, for Appellees. **ON BRIEF:** Bernard J. Dimuro, DIMUROGINSBURG, PC, Alexandria, Virginia, for Appellant. Johanna Schmitt, Nathan S. Mammen, Jordan Miner Romanoff, KIRKLAND & ELLIS, LLP, New York, New York, for Appellees.

BARBARA MILANO KEENAN, Circuit Judge:

This appeal arises from prolonged trademark litigation initiated by appellant RXD Media LLC (RXD) against Apple, Inc. (Apple)[1] over rights to use the "ipad"[2] mark. The district court awarded summary judgment in favor of Apple on all claims advanced by RXD and on all counterclaims asserted by Apple. Also, based on the court's conclusion that RXD infringed on Apple's marks, the court permanently enjoined RXD from any commercial use of the terms "ipad" or "ipod."

On appeal, RXD challenges the district court's infringement ruling on three bases. First, RXD contends that the district court failed to consider that RXD was the "first user" of the descriptive mark "ipad," and that Apple had not established a distinctive, secondary meaning of "ipad" before RXD's alleged infringing use. Based on these assertions, RXD claims superior rights in the mark that bar Apple's infringement claim as a matter of law. Second, RXD argues that the district court erred in ruling in favor of Apple on its infringement claim because Apple failed to show a likelihood of consumer confusion between the parties' uses of "ipad." Third, RXD challenges the broad scope of the court's permanent injunction. Separately, RXD argues that the district court erred in rejecting

[1] The other party named as a defendant and appellee in this case is IP Application Development LLC, a separate company formed and wholly owned by Apple for the purpose of registering the "ipad" mark. We refer to Apple, Inc. and IP Application Development LLC, collectively, as "Apple" throughout this opinion.

[2] While recognizing that Apple's mark is denoted as "iPad," for consistency purposes we use lowercase "ipad" throughout this opinion when discussing the mark. We use "iPad" when referring to the physical device sold by Apple. The same is true for the "ipod" mark and "iPod" device.

2

RXD's claim that two of Apple's trademark applications were void because Apple lacked a bona fide intent to use the "ipad" mark for the services listed in those applications.

Upon our review, we hold that the district court properly granted summary judgment in favor of Apple on both its claims and counterclaims, and that the court did not abuse its discretion in its award of injunctive relief to Apple. We therefore affirm the district court's judgment.

I.

In the late 1990s, Apple began releasing a series of "i-products," meaning "Internet products," which included "iMac," a desktop computer, and "iBook," a laptop computer. In 2001, Apple released the first-generation "iPod," a handheld music device, together with a new support program, "iTunes." The "iPod" became very popular and led to multiple generations and variations of the hardware. With each new generation, the device expanded in functionality to include games, notetaking, photograph and video capabilities, and storage and other applications. This progression led to the release of the first "iPhone" in June 2007.

Against this backdrop, RXD decided to create and market a "mobile Internet notepad" that people could use to make "simple" lists online, including grocery lists and "to do" lists. RXD named its new, internet-based notepad "ipad.mobi" and launched the

3

website in September 2007. The original website and logo are depicted below, with the caption enlarged for legibility:



The website did not result in any commercial success for RXD.

In January 2010, Apple released the "iPad," a touch-screen tablet with broad capabilities. In anticipation of and in conjunction with the release, Apple applied for "intent-to-use" trademark protection in the "ipad" mark under the Lanham Act, 15 U.S.C. § 1051(b)(1). Apple filed Application 779274446 (the 446 application) in July 2009, and Application 77913563 (the 563 application) in January 2010, with the United States Patent and Trademark Office. In each application, Apple sought to protect its use of the "ipad" mark in connection with a long list of electronic goods and services. Notably, Apple also owns eight other "ipad" registrations, including one acquired from Fujitsu, Inc. in 2010 that had been filed in March 2003 and registered thereafter. This registration acquired from Fujitsu (the 575 registration) covered computer and digital goods as well as business and marketing services.

After Apple filed the 446 and 563 applications, RXD filed its own trademark applications in 2010 for protected use of the "ipad" mark. RXD's applications were suspended by the Patent and Trademark Office in 2012 pending resolution of Apple's

4

applications. RXD opposed Apple's applications, instituting adversary proceedings against Apple before the Trademark Trial and Appeal Board (TTAB).

In 2016, while the TTAB proceedings with Apple were still ongoing, RXD launched a "rebranded" website advertising "cloud storage" services. Among other things, this "rebranded" website offered users the ability to upload photographs, videos, music, and documents. RXD chose the name "ipadtoday.com" for the new website, and released a new logo depicting an image of a cloud accompanied by "ipad™." On the new website, the "ipad™" logo was prominently displayed along with pictures of Apple devices, all of which had the "ipad™" logo superimposed on them. An image depicting RXD's "rebranded" website is included below:



In February 2018, after years of proceedings and a full trial on the merits, the TTAB issued a decision in favor of Apple. The TTAB approved Apple's 446 and 563 applications, dismissed RXD's opposition to those applications, and denied RXD's own applications to register the "ipad" mark. RXD filed the present action in the district court seeking review of the TTAB decision and asserting new claims.

In its complaint, RXD alleged that the TTAB's decision was erroneous because: (1) RXD had superior, established rights to the "ipad" mark; (2) based on RXD's superior rights, Apple's use of the "ipad" mark was likely to confuse the public, within the meaning of the Lanham Act, 15 U.S.C. § 1052(d); and (3) Apple's use of the mark constituted unfair

6

competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a). RXD separately alleged that Apple's 446 and 563 applications should be adjudicated void, because Apple lacked a bona fide intent to use the "ipad" mark for the services listed in those applications.[3] Based on these allegations, RXD sought a declaratory judgment that its trademark rights in the "ipad" mark were superior to Apple's rights, and "a permanent injunction enjoining [Apple] . . . from using, registering, or seeking to register the ["ipad"] mark in connection with any computerized or online services."

Apple filed counterclaims for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a)(1)(A), and for infringement and "palming off" under Virginia common law. Apple also sought an injunction against RXD. Apple later amended its claims to add allegations of infringement of its "ipod" mark.

Both parties moved for summary judgment. The district court denied RXD's motion and granted Apple's motion in its entirety, upholding the TTAB decision and awarding judgment in favor of Apple on all claims and counterclaims.

As relevant to this appeal, the district court agreed with Apple that RXD's use of the "ipad" mark on its "ipadtoday.com," website unlawfully infringed on Apple's marks, in violation of 15 U.S.C. § 1114. However, in its analysis, the district court failed to address RXD's assertion that Apple did not own a valid, protectable mark capable of being infringed. According to RXD, its use of the mark preceded Apple's use and Apple's establishment of a secondary meaning in the descriptive mark, precluding any possible

---

[3] RXD attempted to raise this claim in the TTAB proceedings; however, the claim was barred as untimely.

7

infringement by RXD. Nonetheless, the district court held that RXD's use of the "ipad" mark was likely to cause consumer confusion, based on survey data submitted by Apple. After consideration of additional briefing, the court entered a permanent injunction prohibiting RXD from any commercial use of the "ipad" or "ipod" marks or any variant of them.

The district court separately rejected RXD's claim that Apple did not have a bona fide intent to use the "ipad" mark for services identified when Apple submitted the 446 and 563 applications, thereby upholding Apple's registrations. The court explained that Apple had a bona fide intent to use the "ipad" mark for the services indicated in Apple's application, which was supported by a license agreement covering the applied-for services and contemporaneous registration certificates showing that Apple had the capacity to produce the applied-for services. RXD appeals.

II.

RXD challenges two aspects of the district court's summary judgment decision. First, RXD contends that the district court erred for several reasons in concluding that RXD's use of the "ipad" mark infringed on Apple's use of the mark. RXD separately challenges the court's dismissal of RXD's claim that Apple's 446 and 563 trademark registrations were void because Apple lacked a bona fide intent to use the "ipad" mark "for cloud storage services" when applying for trademark protection. We address these arguments in turn.

A.

With respect to the district court's ruling in favor of Apple on its infringement claim, RXD raises three issues. RXD initially contends that its use of "ipad," a "descriptive mark," preceded Apple's use and Apple's development of a distinctive, secondary meaning in the mark, thereby barring Apple's infringement claim as a matter of law. Next, RXD maintains that the district court erred in concluding that RXD's use of "ipad" on "ipadtoday.com" caused consumer confusion with Apple's registered trademarks, resulting in infringement of Apple's use of the mark. Finally, RXD challenges the district court's issuance of a permanent injunction, as well as the scope of that injunction.

Before addressing these arguments, we describe some of the legal principles that inform our analysis. As a general matter, "[r]ights in a trademark are determined by the date of the mark's first use in commerce." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015); *see also Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). However, this general principle applies only if the mark is sufficiently distinctive. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 315 (4th Cir. 2017); 2 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 16:4 (5th ed. 2020). Here, the parties agree that "ipad" is not distinctive, but instead qualifies as a descriptive mark, because "ipad" describes the product or service, namely, an internet notepad. *See In re Chamber of Com. of the U.S.*, 675 F.3d 1297, 1300 (Fed. Cir. 2012).

A party can obtain rights to use a descriptive mark only when the mark has acquired distinctiveness, or a "secondary meaning." *Converse, Inc. v. Int'l Trade Comm'n*, 909 F.3d 1110, 1116 (Fed. Cir. 2018); *see also Grayson O Co.*, 856 F.3d at 315. A mark acquires

9

secondary meaning when consumers have come to associate the mark with the source of the product. *Grayson O Co.*, 856 F.3d at 315. The entity seeking protection of the mark must show that the term acquired this secondary meaning before the alleged infringing use by another. *See Converse*, 909 F.3d at 1116-17. In other words, trademark protection is triggered for the user of a descriptive mark as soon as the mark acquires a "secondary meaning." Such protection does not retroactively prohibit prior lawful uses of the mark by other entities. *See id.* at 1117-18.

To prove trademark infringement under 15 U.S.C. § 1114, a party must show both that (1) it owns a valid and protectable mark, and that (2) another's use of the mark creates a likelihood of consumer confusion. *See Variety Stores, Inc. v. Wal-Mart Stores Inc.*, 888 F.3d 651, 660 (4th Cir. 2018). As RXD observes, the district court failed to address RXD's argument that Apple did not own a valid protectable mark in "ipad" based on RXD's purported "first use" of the mark. We therefore first consider RXD's arguments that Apple did not have a protected mark in "ipad."

1.

At the outset, we observe that RXD does not assert in this appeal its prior claim that its use of "ipad" is entitled to trademark protection.[4] Instead, RXD defends against Apple's

---

[4] Given that "ipad.mobi" did not prosper, RXD was unable to demonstrate that it ever acquired secondary meaning in "ipad," "ipad.mobi," or any combination thereof. *See Converse*, 909 F.3d at 1116 (A term acquires "secondary meaning …when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." (internal quotation and citation omitted)). Thus, RXD does not appeal the dismissal of its own claims for trademark infringement.

claim of infringement. RXD argues that Apple's use of the mark was not protected because RXD was the first, or "senior" user of the descriptive mark, using "ipad.mobi" on its website in September 2007. RXD contends that because Apple had not established a "secondary meaning" in the mark by that time, a "senior" user like RXD as a matter of law could not have "infringe[d] a junior descriptive mark."

In response, Apple contends that RXD's arguments fail for three reasons. Initially, Apple maintains that RXD is not the senior user of the mark. According to Apple, it acquired the 575 registration of "ipad" from Fujitsu, which included a "first use" date in 2002. Separately, Apple submits that even assuming RXD was the senior user of the mark, Apple's infringement claim does not rest on RXD's limited use of the mark in 2007. Apple asserts that, instead, its claim is based on RXD's altered use of the mark in October 2016 on its "ipadtoday.com" website when RXD blatantly mimicked Apple products in connection with RXD's cloud storage services. Apple contends that it had established secondary meaning in the mark by October 2016, or alternatively had obtained an "incontestable" registered trademark, which provides a presumption of a secondary meaning in favor of the registrant. Finally, Apple contends that RXD's altered use of the mark in 2016 infringed on Apple's rights, even if Apple were deemed not the senior user, because Apple would qualify as an "intervening junior user" of the mark. We agree with Apple's position.

A party can become a senior user of a mark by acquiring from a previous owner an assignment of rights. *See Lone Star Steakhouse & Saloon v. Alpha of Va., Inc.*, 43 F.3d 922, 931-32 (4th Cir. 1995) (noting that a junior user obtained seniority over the original

11

user by receiving an assignment of rights from a third-party user); 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 18:16.50 (5th ed. 2020); Restatement (Third) of Unfair Competition § 34 (1995) (recognizing that an assignee succeeds to assignor's priority of use in the designation). After a valid assignment, "the assignee steps into the shoes of the assignor." *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003) (quoting *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986)); *see* 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 18:15 (5th ed. 2020).

When Fujitsu assigned to Apple its rights to the "ipad" mark in March 2010, that assignment included Fujitsu's "first use" date of January 2002 and its "priority use" date[5] of March 2003. Apple acquired Fujitsu's then-pending trademark application, which had been filed on March 7, 2003. RXD does not challenge the validity of the 575 application or Fujitsu's assignment to Apple. Accordingly, we conclude that Apple stepped into the shoes of Fujitsu, thereby obtaining a "first use" date of January 2002 and a "priority use" date of March 2003. For this reason, RXD's argument that it was the "first user" of the "ipad" mark lacks merit.

We also observe that Apple's claim of trademark infringement against RXD was based on the assertion that Apple had achieved secondary meaning in the descriptive mark

---

[5] "[T]he Lanham Act provides that an applicant seeking to register a trademark in the United States may claim a nationwide right of priority for use of the mark as of the filing date of its application with the PTO." *Humanoids Grp. v. Rogan*, 375 F.3d 301, 303 n.2 (4th Cir. 2004). Accordingly, Apple claims a "priority use" date of March 7, 2003, the date that Fujitsu filed its application to register the "ipad" mark.

12

before October 2016, when RXD developed its "ipadtoday.com" website. Thus, Apple was not required to prove that it had established secondary meaning in the mark before RXD's use of ipad.mobi in 2007 but could succeed on its claim by establishing secondary meaning status before October 2016. *See* 6 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 31:20 (5th ed. 2020) (explaining that an entity seeking trademark protection is not required to sue an infringing user "until the likelihood of confusion caused by the accused use presents a significant danger to the mark").

The record is clear that Apple had established secondary meaning in the descriptive mark before October 2016. Not only did Apple release its "iPad" device in 2010 with large commercial success, sufficient to demonstrate secondary meaning, but Apple's 575 registration became "incontestable" in 2015. *See George & Co. v. Imagination Ent., Ltd.*, 575 F.3d 383, 394-95 (4th Cir. 2009). An incontestable registration triggers a presumption that a mark has acquired a secondary meaning, and becomes "conclusive evidence" of the registrant's exclusive right to use the mark. 15 U.S.C. § 1115(b). RXD does not dispute that this presumption is applicable.

Additionally, even if we were to assume that RXD was the "first user" of the mark in 2007, its wholly altered use of the mark on its "ipadtoday.com" website in 2016, on the heels of Apple's commercial success in releasing the "iPad" device, would not be entitled to protection. Although trademark law generally provides "first users" with protection to continue using a mark in the manner that was legal when first used, the law does not protect or permit a "first user's" expansion beyond its original product line into an area occupied by an "intervening junior user" who has established its own rights in the mark. *See* 4 J.

13

McCarthy, McCarthy on Trademarks and Unfair Competition § 24:20 (5th ed. 2020) (explaining that expansion by a "first user" will constitute infringement upon a later user of a mark if expansion would result in "likelihood of confusion in derogation of established rights of the intervening user"); *Fuller Prods. Co. v. Fuller Brush Co*., 299 F.2d 772, 775 (7th Cir. 1962) ("[P]rior use of a [descriptive] mark affords no protection for expansion of trade to goods other than those of the same descriptive properties as the goods with which the mark has become identified by such prior use.").

Here, the evidence showed that RXD's original product line launched in 2007 was limited to a mobile internet notepad, which consumers could use to create simple lists such as grocery and "to do" lists. By January 2010, however, Apple had released the handheld "iPad" device, which had a touch-screen design and possessed broad capabilities that included, among other things, a camera, access to email functions through use of the internet, and access to an unlimited number of internet websites. Thus, even if RXD were assumed to be the "first user" of the "ipad" mark, by January 2010, Apple had begun using the mark as an "intervening user" of a product much different and much more sophisticated than the internet notepad marketed unsuccessfully by RXD. *See* 4 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 24:20 (5th ed. 2020); *Fuller Prod. Co.*, 299 F.2d at 775. Accordingly, even assuming that RXD's use of "ipad" was lawful when employed as a part of "ipad.mobi" in 2007, the record established as a matter of law that Apple was an "intervening junior user" of the "ipad" mark before RXD "rebranded" and expanded its services in 2016 with its "ipadtoday.com" website. 4 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 24:20 (5th ed. 2020); *see also, e.g.*, *Patsy's Brand,*

14

*Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 217 (2d Cir. 2003) (upholding an injunction against the "senior user" of the "PATSY's" mark when the restaurant sought to use mark on bottled pasta sauces, and the "junior user" was already bottling pasta sauces under the mark). For these additional reasons, RXD's use of "ipad" on its ipadtoday.com website was not subject to "first user" protection.[6] Accordingly, we conclude that Apple had an established, protected mark capable of being infringed by RXD's use of the mark in 2016. *See Variety Stores*, 888 F.3d at 660.

2.

The guarding of "a trademark against use by others" serves to "protect the ability of consumers to distinguish among competing producers." *U.S. Pat. & Trademark Office v. Booking.com B.V.*, 140 S. Ct. 2298, 2302 (2020) (alteration and citation omitted) (referencing S. Rep. No. 79-1333 at 3 (1946) (noting that "trademark statutes aim to 'protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get'")). As discussed below, consumers plainly will be confused by RXD's use of the "ipad" mark for cloud storage services.

---

[6] Our conclusion is not altered by RXD's attempts to minimize the significance of its actions in 2016 by asserting that it had always offered "cloud storage," while Apple never has offered this service in affiliation with its "ipad" mark nor established a secondary meaning in the mark for this specific service. That argument is frivolous. The original "ipad.mobi," which allowed users who visited the webpage to input basic text into one of three lists and was accessible only from the "ipad.mobi" webpage, was not a cloud storage website by any reasonable understanding of that term.

RXD argues that the district court erred in concluding as a matter of law that RXD infringed on Apple's trademarks. According to RXD, the issue of likelihood of confusion in its use of the "ipad" mark on its "ipadtoday.com" website presented a question of fact to be decided by a jury. RXD asserts that a jury reasonably could have found that RXD's use of the "ipad" mark was not likely to confuse consumers based on the different services offered by RXD and Apple in conjunction with the mark. We disagree with RXD, and conclude that the record contains extensive evidence supporting the district court's decision.

Because this issue was decided as a matter of law at the summary judgment stage, our review is de novo. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). A party alleging trademark infringement must establish that the defendant's unauthorized use of a mark is "likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods." *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992); *see also CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) ("Likelihood of confusion exists if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." (citation omitted)). As we observed in *Variety Stores, Inc.*, 888 F.3d at 660, courts generally consider nine factors (the factors) in determining whether there is likelihood of confusion:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities used by the markholders;

16

(5) the similarity of the advertising used by the markholders;
(6) the defendant's intent;
(7) actual confusion;
(8) the quality of the defendant's product; and
(9) the sophistication of the consuming public.

888 F.3d at 660 (citation omitted). These factors are not always weighted equally, and consideration of all the factors is not mandatory. *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 154 (4th Cir. 2012) (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)).

Relevant here, actual confusion is the most important factor in determining "likelihood of confusion" in trademark infringement claims. *CareFirst of Md., Inc.*, 434 F.3d at 268 (explaining that evidence of actual confusion is "often paramount" in determining the likelihood of confusion (quoting *Lyons P'ship, v. Morris Costumes, Inc*., 243 F.3d 789, 804 (4th Cir. 2001)). Actual confusion can be shown through either anecdotal or survey evidence. *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc*., 87 F.3d 654, 661 (4th Cir. 1996). We previously have explained that survey evidence demonstrating confusion in 10% or more of consumers supports a finding that actual confusion exists. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 n.15 (4th Cir. 1996). And more recently, we stated that a "confusion rate of 17 percent" is "clear evidence of actual confusion for purposes of summary judgment." *Rosetta Stone Ltd.*, 676 F.3d at 159.

We agree with the district court's analysis that the evidence regarding likelihood of confusion weighed heavily in favor of Apple. Critically, under factor seven, Apple presented very strong evidence of actual confusion. Apple submitted evidence of a survey

17

showing that 27% of consumers mistakenly believed that Apple was the source or sponsor of, or affiliated with, RXD's use of "ipad" on the ipadtoday.com website.[7] This figure plainly is much higher than the percentage of consumer confusion that we found compelling in prior decisions. And Apple also provided anecdotal evidence of actual confusion through comments posted on RXD's Facebook page. For example, one person questioned why RXD was able to use "ipadtoday.com" as its domain name. Another individual asked how RXD had received authorization to name its software after Apple's products.

Several other factors also support the district court's conclusion that RXD's use of the "ipad" mark was likely to cause consumer confusion. First, Apple's "ipad" marks are strong and distinctive. "The strength of a mark ultimately depends on the degree to which the designation is associated by prospective purchasers with a particular source." *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc*., 130 F.3d 88, 93 (4th Cir. 1997) (internal citations and quotations omitted). Here, the evidence showed that Apple has experienced undeniable commercial success, has promoted its products through regular

---

[7] RXD argues that the survey was flawed and that it "did not tell the respondents the full story." But the survey conducted by Dr. E. Deborah Jay followed the "Eveready model," which has "become a standard and widely accepted survey format" to test likelihood of confusion. 6 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 32:174 (5th ed. 2020). RXD also contends that there was no actual confusion because there was no evidence of a mistaken purchase from RXD instead of Apple. However, "evidence of actual confusion need not be limited to evidence of mistaken *completed* transactions." *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 322 (3d Cir. 2015) (citing *Morningside Grp., Ltd. v. Morningside Cap. Grp., LLC*, 182 F.3d 133, 141 (2d Cir. 1999)). Accordingly, we reject these arguments.

18

advertising using the mark, and has obtained extensive media coverage regarding its "iPad" device.

Under the second factor, in reviewing the similarity of the marks, a court focuses on "whether there exists a similarity in sight, sound, and meaning that would result in confusion." *George & Co.*, 575 F.3d at 396. In the present case, it is undisputed that both parties are utilizing the same mark, "ipad."

Next, under the third factor, the evidence showed that both Apple and RXD are using the "ipad" mark in connection with computer goods and services. *See id*. at 397. (explaining that goods or services do not need to be identical or in direct competition for the goods or services provided to be similar). Although the services offered by RXD and Apple are not identical, the evidence showed that they were sufficiently related that they were likely to cause consumer confusion. *See Commc'ns Satellite Corp. v. Comcet*, *Inc*., 429 F.2d 1245, 1252 (4th Cir. 1970) (explaining that Comcet's computers are closely related to Comsat's satellite communication services such that the source or sponsorship of the goods could cause confusion).

In support of the fourth factor, the evidence showed that both parties are using their websites to distribute their products. These websites are freely accessible to consumers interested in the parties' products. Additionally, with respect to factor five, the evidence demonstrated that both parties advertise their particular "ipad" products online, and that RXD mimicked aspects of Apple's branding when RXD redesigned its website in 2016. *See CareFirst of Md., Inc*., 434 F.3d at 273 (noting that courts consider the media used, the

geographic area in which advertising occurs, the appearance of the advertisements, and the content of the advertisements in considering factor five).

The sixth factor counsels strongly in Apple's favor regarding RXD's intent in using the "ipad" mark. The record showed that RXD was aware that its use of this mark could constitute trademark infringement, a fact suggestive of bad faith. *See Pizzeria Uno*, 747 F.2d at 1535 (recognizing that "one intending to profit from another's reputation" uses similar marks to purposefully "induce confusion"). After one forum user stated online regarding RXD's use of ipad.mobi, "[s]ounds like a trademark infringement there, I doubt its worth developing," RXD's founder replied: "[Apple could] do all they want . . . they don't own the trademark" and "bring it on." And, as noted above, RXD also redesigned its website, mimicking elements of Apple's branding.

Regarding the remaining two factors used to evaluate consumer confusion, the quality of the defendant's product and the sophistication of the consuming public, we agree with the district court's assessment that the record showed that the impact of these factors was neutral. Therefore, having reviewed the evidence relating to all the factors, we hold that the record easily supports the district court's conclusion that most of the factors, including the key factor of evidence of actual confusion, weighed in favor of Apple.

We do not dispute RXD's observation that, typically, trademark infringement claims, especially the issue of likelihood of confusion, are "particularly amenable to resolution by a jury." *Anheuser-Busch, Inc.*, 962 F.2d at 318; *see also Variety Stores, Inc.*, 888 F.3d at 666 (explaining that "the likelihood of consumer confusion is an inherently factual issue." (internal quotation and citation omitted)). Nevertheless, as with any other

20

issue of fact, summary judgment remains appropriate when no jury reasonably could have ruled in the non-moving party's favor. *See CareFirst of Md., Inc.*, 434 F.3d at 274. That is the case here. The majority of the relevant factors described above, particularly the key factor of actual confusion, weigh in Apple's favor. Based on the record before us, we hold that a jury could not have reasonably concluded that RXD's use of the "ipad" mark was unlikely to cause consumer confusion. Accordingly, the district court did not err in awarding summary judgment to Apple on its claim of trademark infringement.[8]

3.

We next consider RXD's challenge to the permanent injunction issued by the district court. We review for abuse of discretion both the court's decision to enter the injunction and the scope of relief awarded. *Roe v. Dep't of Def.*, 947 F.3d 207, 231 (4th Cir. 2020). "[A] federal district court has wide discretion to fashion appropriate injunctive relief in a particular case." *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992).

RXD primarily seeks vacatur of the injunction for generally the same reasons that it sought to overturn the district court's conclusion that RXD had infringed on Apple's trademarks. Having addressed those arguments earlier in this opinion, we again reject them

---

[8] Our conclusion is not altered by RXD's additional contention that a jury could have found that there was no likelihood of confusion because other third parties also used the term "ipad." This argument lacks merit given the overwhelming evidence presented by Apple demonstrating likelihood of confusion. And although RXD posits that many third parties also use the "ipad" mark, RXD has not developed this argument.

21

here and conclude that they do not provide a basis for challenging the award of injunctive relief in this case.

Alternatively, however, RXD argues that the injunction is overbroad in scope. In view of the district court's holding that RXD committed trademark infringement as a matter of law, which we affirm here, the court acted within its discretion in enjoining RXD from employing all uses and variations of the "ipad" and "ipod" marks. The injunction properly required that RXD keep a "safe distance" from its previously unlawful conduct. As one sister circuit has explained:

> The due protection of [trademark] and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir. 1930).

This "safe distance rule" recognizes that "bad actors" deserve less leeway. *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 40 (1st Cir. 2002) ("[A]n infringer, once caught, must expect some fencing in."); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1156 (7th Cir. 1994) ("Without the so-called safe distance rule, the enjoined defendant could simply make a tiny change and start a new trademark contest all over again. . . ." (alterations and citation omitted)). Thus, the "safe distance" rule allows courts to "frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement." *Tamko Roofing Prods., Inc.*, 282 F.3d at 40 (citation omitted).

22

Here, the record demonstrably showed that RXD was a "proven infringer." The district court expressly relied on the "safe distance" rule as justification for the scope of the injunction. Given the clear evidence in this case of RXD's infringement of Apple's use of the "ipad" mark, we hold that the district court did not abuse its discretion in issuing the injunctive relief in favor of Apple.

B.

Finally, we address RXD's argument that the district court erred in holding "that Apple met its burden of establishing a bona fide intent to use the ['ipad'] mark for cloud storage services." This argument fails at the outset, however, because RXD mischaracterizes this aspect of the district court's judgment. In its memorandum opinion, the district court held that Apple had established its bona fide intent to use the "ipad" mark for the services described in its 446 and 563 applications. The court stated:

> Here, Apple has produced its license agreement for the IPAD mark, which covers the applied-for services. Apple has also produced evidence, through the form of contemporaneous registration certificates, that it had the capacity to produce the applied-for services. Viewing this in the context of the strength of Apple's brand, and its breadth of products and services, this evidence is sufficient to demonstrate Apple's bona fide intent to use the ["ipad"] mark rather than simply reserve rights in the ["ipad"] mark.

Based on the record before us, the district court did not err in reaching this conclusion. Contrary to RXD's assertion, Apple did not apply to use the "ipad" mark for cloud storage. And Apple was not required to prove a bona fide intent to use a trademark for services not identified in its application.

23

Under the Lanham Act, an applicant for a registered trademark must demonstrate its bona fide intent to use a mark only with respect to the applied-for services. 15 U.S.C. § 1051(b)(1). Bona fide intent to use a mark must be demonstrated by objective evidence, but the evidentiary bar is not high. *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1376 (Fed. Cir. 2015).

As the party challenging the validity of Apple's trademarks, RXD had the initial burden to show that Apple did not have the bona fide intent to use the trademark as described in the applied-for services. *Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 865 (6th Cir. 2017); 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 19:14 (5th ed. 2020) (explaining that if a challenger satisfies its initial burden by showing an absence of documentary evidence of intent, the burden shifts to the applicant to show bona fide intent). RXD failed to make this preliminary showing. There was no absence of documentary evidence regarding Apple's intent. Apple produced ample evidence, including a licensing agreement covering the applied-for services and contemporaneous registration certificates, both of which supported the district court's holding that Apple had demonstrated a bona fide intent to use the mark for the services listed in its applications. *See Lane Ltd. v. Jackson Int'l Trading Co.*, 33 U.S.P.Q.2d 1351 (T.T.A.B. 1994) (holding that the applicant proved bona fide intent by submitting objective documentary evidence of a business plan and licensing program describing intent to use the mark). Thus, we hold that the district court did not err in concluding that Apple had a bona fide intent to use the mark for the services listed in its application.

24

## III.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*