THIS ORDER IS A PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451
General Contact Number: 571-272-8500

Vigil

Mailed:  November 24, 2025

Opposition No. 91289595

*CandyVerse, LLC*

*v.*

*Zeeth Ltd.*

**Before English, Cohen, and Casagrande,**
**Administrative Trademark Judges.**

**By the Board:**

This proceeding comes before the Board for consideration of (i) the motion of Opposer CandyVerse, LLC (filed February 13, 2025) for summary judgment, and (ii) the cross-motion of Applicant Zeeth Ltd. (filed March 17, 2025) for summary judgment. The motions are fully briefed.[1]

---

[1] On April 16, 2025, Opposer filed and served its combined reply brief in support of its motion for summary judgment and response in opposition to Applicant's cross-motion for summary judgment. *See* 25 TTABVUE. Applicant then submitted a May 6, 2025 filing captioned "reply in support of its cross-motion for summary judgment and partial opposition to Opposer's motion for summary judgment." *See* 26 TTABVUE 2 (capitalization altered). However, Applicant had already served an opposition to Opposer's motion. After the moving party's reply brief, "[t]he Board will consider no further papers in support of or in opposition to a motion." Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a). Accordingly, Applicant's May 6, 2025 filing will only be considered to the extent it replies in support of its cross-motion for summary judgment.

## I.     Background

Applicant, a company organized and located in the British Virgin Islands, seeks registration of the mark CANDYVERSE, in standard characters, for use with, inter alia, "[c]onfectionery made of sugar, dessert puddings and bakery desserts" in International Class 30, "[f]lavoured frozen soft drinks; iced soft drinks; part frozen slush fruit drinks; slush fruit drinks" in International Class 32, and "[r]etail store services featuring food and drink products" in International Class 35 based on its asserted bona fide intention to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). Applicant filed its application Serial No. 97432801 on May 27, 2022, and claimed a priority date of December 2, 2021 based on European Union Application No. 018613058 under Trademark Act Section 44(d), 15 U.S.C. § 1126(d).

Opposer opposes registration of Applicant's mark on the ground of priority and likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C. § 1052(d). 15 TTABVUE.[2] Opposer alleges common law rights in the marks CANDYVERSE and

, both for use with "candy, educational and entertainment programs about candy and confections, retail store services featuring candy, bulk candy, novelty candy, oversized candy, confectionary-based goods, ice cream, clothing t-shirts,

---

[2] Citations to the record in this order are to TTABVUE, the Board's electronic docketing system. The number preceding "TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE" refer to the page number(s) of that particular docket entry. The parties should cite to the record using TTABVUE throughout this proceeding.

candy-related merchandise, gift items, candy accessories, toys, beverages, greeting cards, packaged candy products, and other related services" beginning "at least as early as March 4, 2022." *Id.* at 3-4. Opposer also pleads ownership of two pending applications filed on January 26, 2024 to register the above marks for use with, inter alia, candy in International Class 30, retail store services featuring candy, ice cream, clothing, and other gift items in International Class 35, and "[e]ducational and entertainment services, namely, short-form video programs about candy and confections, accessible by computer networks" in International Class 41.[3] 15 TTABVUE 4.

In its February 6, 2025 answer to the amended notice of opposition, Applicant admits, inter alia, that (1) the parties' marks are "identical in sound, appearance, and commercial impression," (2) the parties' goods and services with which the parties' marks are used are "identical in some instances, and otherwise, confusingly similar," and (3) the "coexistence of [the] marks is likely to cause confusion, mistake or deception." 20 TTABVUE 4-5 (¶¶ 8, 10-13). Applicant otherwise denies the salient allegations in the notice of opposition—in particular, that Opposer has priority.[4]

---

[3] Application Serial Nos. 98376998 and 98377004 filed under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), both claiming March 4, 2022 as the date of first use and first use in commerce for all of the identified goods and services. Application Ser. No. 98377004 for the design mark includes the following description of the mark: "The mark consists of a circle with a peppermint in the middle of it and a ring around the peppermint and a smaller circle above it and on top of that the word 'CANDYVERSE'." Color is not claimed as a feature of the mark.

[4] Applicant also asserts a purported affirmative defense amplifying its denials that Opposer has prior rights in its mark, 20 TTABVUE 5-6, but amplifications of denials of allegations are not true affirmative defenses. *See, e.g., Shenzhen IVPS Tech. Co. v. Fancy Pants Prods., LLC*, No. 91263919, 2022 TTAB LEXIS 383, at *3 n.5 (TTAB 2022) ("amplifications [of

## II.   The Parties' Cross-Motions for Summary Judgment

### A.   Summary Judgment Standard

Summary judgment is an appropriate method for disposing of cases in which there are no genuine disputes as to material facts, thus allowing resolution as a matter of law. *See* Fed. R. Civ. P. 56(a). A party moving for summary judgment has the burden of demonstrating the absence of any genuine dispute as to a material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987). A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the nonmoving party. *See Opryland USA Inc. v. Great Am. Music Show Inc.*, 970 F.2d 847, 850 (Fed. Cir. 1992); *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 202 (Fed. Cir. 1992).

Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325; *Copelands' Enters. Inc. v. CNV Inc.*, 945 F.2d 1563, 1565 (Fed. Cir. 1991). However, the burden of the nonmovant to respond arises only if summary judgment is properly supported. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970). If the evidence

---

denials] are not true affirmative defenses"). Nonetheless, such amplifications are generally permitted "where their inclusion will not prejudice the adverse party, but rather will provide further notice of the basis for a claim or defense." *See, e.g., Ohio State Univ. v. Ohio Univ.*, No. 91108907, 1999 TTAB LEXIS 134, at *10 (TTAB 1999) (citing *Harsco Corp. v. Elec. Scis. Inc.*, No. 92016543, 1988 TTAB LEXIS 46, at *3 (TTAB 1988)).

produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* (quoting Fed. R. Civ. P. 56 advisory committee notes to the 1963 amendments).

The evidence of record on summary judgment must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn from the undisputed facts in favor of the nonmoving party. *See Lloyd's Food Prods. Inc. v. Eli's Inc.*, 987 F.2d 766, 767 (Fed. Cir. 1993); *Opryland USA*, 970 F.2d at 850; *Bad Boys Bail Bonds, Inc. v. Yowell*, No. 94002552, 2015 TTAB LEXIS 262, at *14 (TTAB 2015). Here, the fact that cross-motions for summary judgment have been filed on the likelihood of confusion claim does not necessarily mean that there are no genuine disputes of material fact, and does not dictate that judgment should be entered. *See Univ. Book Store v. Bd. of Regents of the Univ. of Wis. Sys.*, No. 91084223, 1994 TTAB LEXIS 8, at *15-16 (TTAB 1994).

## B. Entitlement to a Statutory Cause of Action

In order to prevail on its motion for summary judgment, Opposer must establish that there is no genuine dispute of material fact that it has entitlement to a statutory cause of action, which is required for all plaintiffs in inter partes cases. *See Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). "[A] plaintiff may oppose registration of a mark when (1) [its] interests are within the zone of interests protected by the statute [(i.e., it has a 'real interest'

in the outcome of the proceeding)] and (2) [it] has a reasonable belief in damage that would be proximately caused by registration of the mark in violation of the opposition statute." *Curtin v. United Trademark Holdings, Inc.*, 137 F.4th 1359, 1367 (Fed. Cir. 2025) (citing *Lexmark Int'l, Inc.*, 572 U.S. at 129-34); *see also Australian Therapeutic Supplies Pty Ltd.*, 965 F.3d at 1373-74. Generally, proof that the defendant's involved mark has been cited as a bar or potential bar to the plaintiff's registration of its pleaded mark satisfies both elements and establishes entitlement to a statutory cause of action. *See Empresa Cubana del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014) (USPTO's refusal to register the petitioner's mark based on a likelihood of confusion with respondent's registered marks demonstrated the petitioner's real interest in the proceeding and reasonable belief in damage); *Rapid Inc. v. Hungry Marketplace, Inc.*, No. 91236033, 2022 TTAB LEXIS 260, at *16-17 (TTAB 2022) (USPTO's suspension of the opposer's pleaded application pending disposition of the subject application sufficiently established the opposer's entitlement).

In its notice of opposition, Opposer alleged ownership of two pending applications to register its pleaded marks. 15 TTABVUE 4 (¶ 2). Opposer attached to its motion for summary judgment copies of Office Actions identifying Applicant's involved mark as a potential bar to registration of Opposer's marks under Trademark Act Section 2(d). 21 TTABVUE 90, 118. Accordingly, we find that there is no genuine dispute of material fact that Opposer has entitlement to a statutory cause of action. *See Rapid Inc.*, 2022 TTAB LEXIS 260, at *16-17.

### C. Section 2(d) Claim

To prevail on its likelihood of confusion claim under Section 2(d), Opposer must establish that it has priority of use, and that contemporaneous use of the parties' marks in connection with their respective goods and services would be likely to cause confusion or mistake, or to deceive consumers. *See* Trademark Act Section 2(d); *Hornblower & Weeks, Inc. v. Hornblower & Weeks, Inc.*, No. 91110043, 2001 TTAB LEXIS 562, at *7 (TTAB 2001). In its answer to the operative notice of opposition, Applicant admits that coexistence of the parties' marks is likely to cause confusion, mistake, or to deceive consumers. 20 TTABVUE 5 (¶ 13). The parties fully briefed the likelihood of confusion claim, with both parties arguing there is no genuine dispute of material fact that contemporaneous use of the marks is likely to cause confusion. 21 TTABVUE 18; 23 TTABVUE 4 ("Applicant respectfully submits that the only dispute herein is which party's CANDYVERSE mark has priority as a matter of law."). Accordingly, the sole issue in dispute is whether Opposer has prior proprietary rights in its pleaded marks.

### 1. The Parties' Priority Claims

Opposer acknowledges that it only prevails on its claim of priority if Applicant cannot assert priority based on its foreign application under Section 44(d). 25 TTABVUE 2 ("[Opposer] has superior rights unless Applicant's priority claim is valid."). Applicant claims December 2, 2021 as its constructive use date, relying on its Section 44(d) priority claim based on the filing date of its European Union Trademark Application. However, Opposer argues that Applicant is not entitled to claim priority under Section 44(d), and can only rely on the filing date of its U.S.

application, May 27, 2022, as its constructive use date, which is after Opposer's claimed priority based on its common law use "at least as early as March 4, 2022." 1 TTABVUE 5.

**2.      Validity of Applicant's Section 44(d) Priority Date**

Trademark Act Section 44(d) allows an applicant to rely on the filing date of an application in a foreign country as its date of constructive use under certain circumstances. *RxD Media, LLC v. IP Application Dev. LLC*, No. 91207333, 2018 TTAB LEXIS 37, at *24 (TTAB 2018), *aff'd*, 377 F. Supp. 3d 588 (E.D. Va. 2019), *aff'd*, 986 F.3d 361 (4th Cir. 2021).

Section 44 of the Trademark Act states, in relevant part:

(b) Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter.

* * * *

(d) An application for registration of a mark under sections 1051, 1053, 1054, or 1091 of this title or under subsection (e) of this section filed by a person described in subsection (b) of this section who has previously duly filed an application for registration of the same mark in one of the countries described in subsection (b) of this section shall be accorded the same force and effect as would be accorded to the same application if filed in the United States on the same date on which the application was first filed in such foreign country: Provided, That—

(1) the application in the United States is filed within 6 months from the date on which the application was first filed in the foreign country;

8

(2) the application conforms as nearly as practicable to the requirements of this chapter, including a statement that the applicant has a bona fide intention to use the mark in commerce;

(3) the rights acquired by third parties before the date of the filing of the first application in the foreign country shall in no way be affected by a registration obtained on an application filed under this subsection;

(4) nothing in this subsection shall entitle the owner of a registration granted under this section to sue for acts committed prior to the date on which his mark was registered in this country unless the registration is based on use in commerce.

In like manner and subject to the same conditions and requirements, the right provided in this section may be based upon a subsequent regularly filed application in the same foreign country, instead of the first filed foreign application: *Provided*, That any foreign application filed prior to such subsequent application has been withdrawn, abandoned, or otherwise disposed of, without having been laid open to public inspection and without leaving any rights outstanding, and has not served, nor thereafter shall serve, as a basis for claiming a right of priority.

Thus, to receive a priority filing date under Section 44(b) and (d): (1) the application in the United States must be filed within six months from the filing date of the first-filed[5] foreign application; (2) the application must include a verified statement that the applicant has a bona fide intent to use the mark in commerce; and (3) the applicant's country of origin and the country where the foreign application was filed must (a) be party to an international treaty or agreement with the United States that

---

[5] A subsequent, regularly-filed application may be eligible if any prior-filed application has been withdrawn, abandoned, or otherwise disposed of, without having been laid open to public inspection and without having any rights outstanding, and has not served as a basis for claiming a right of priority. Trademark Act § 44(d).

provides a right of priority or (b) extend reciprocal rights to priority to U.S. nationals.[6] 15 U.S.C. § 1126(b), (d); 37 C.F.R. § 2.34(a)(4).

Here, the opposed application was filed within six months of the first-filed foreign application and includes the requisite verified statement of Applicant's bona fide intent to use the mark in commerce. The foreign application, filed in the European Union, is eligible for benefits under Section 44(b) because the European Union and the United States are members of the World Trade Organization Agreement on Trade-Related Aspects of Intellectual Property Rights, Apr. 15, 1994, Annex 1C, 1869 U.N.T.S. 299, https://www.wto.org/english/docs_e/legal_e/27-trips_01_e.htm (last visited Nov. 21, 2025); WORLD TRADE ORGANIZATION MEMBERS AND OBSERVERS, https://www.wto.org/english/thewto_e/whatis_e/tif_e/org6_e.htm (last visited Nov. 21, 2025). Thus, Applicant satisfied the timing, verified statement, and eligible foreign application requirements of Section 44.

The parties dispute whether Applicant, a juristic person from the British Virgin Islands, is eligible to claim priority under Section 44(b) and (d). What remains to be resolved is whether Applicant's country of origin is party to an international treaty or agreement with the United States or extends reciprocal rights to priority to U.S. nationals.

---

[6] Notably, "[t]o obtain a priority filing date under §44(d), the foreign application does **not** have to be filed in the applicant's country of origin. However, to obtain registration under §44(e) based on the foreign registration that will issue from the application on which the applicant relies for priority, the applicant must establish that the country in which the application was filed is its country of origin." TRADEMARK MANUAL OF EXAMINING PROCEDURE TMEP § 1002.02 (May 2025) (emphasis in original changed from italics to bold).

Applicant, for its part, concedes that the British Virgin Islands is not a party to a relevant treaty or agreement with the United States, but argues that the Virgin Islands Trade Marks Act ("VITMA") extends reciprocal priority rights to U.S. nationals and thus gives Applicant a right to priority under Trademark Act Section 44(d). 23 TTABVUE 13. Although a British overseas territory, the British Virgin Islands is Applicant's country of origin because the British Virgin Islands is internally self-governing and Applicant is organized under the laws thereof. *See* GOVERNMENT OF THE VIRGIN ISLANDS POLITICS, https://www.bvi.gov.vg/Politics (last visited Nov. 3, 2025).

Although Opposer argues that TMEP § 1002.03 precludes juristic persons from the British Virgin Islands from asserting priority under Section 44(d), the TMEP does not have the force and effect of law. *See W. Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 1127 n.8 (Fed. Cir. 1994); *see also In re Pennington Seed, Inc.*, 466 F.3d 1053, 1059 (Fed. Cir. 2006). This section merely explains the distinction between individual persons and juristic persons from British overseas territories or Crown Dependencies. Ultimately, the parties' dispute boils down to whether the British Virgin Islands "extends reciprical rights to nationals of the United States by law[.]" Trademark Act § 44(b).

The determination of foreign law is a question of law. Fed. R. Civ. P. 44.1; *see also Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 42 (2018). Whether a foreign nation extends reciprocal rights of priority to U.S. nationals pursuant to Section 44(b) is an issue of first impression. In the context of the Reciprocity Act,

which requires foreign plaintiffs in actions against the United States to show American citizens have equal standing to sue in their home courts, the Federal Circuit has explained that reciprocity is not analyzed rigidly. *See Ferreiro v. U.S.*, 350 F.3d 1318, 1322 (Fed. Cir. 2003). Reciprocity requires only that U.S. nationals have the same opportunity as the foreign nation's citizens. *See id.* at 1321-22; *see also Nippon Express USA, Inc. v. U.S.*, 28 C.I.T. 1845, 1849 (Ct. Int'l Trade 2004); *Gal-Or v. U.S.*, 113 Fed. Cl. 540, 551 (Fed. Cl. 2013) (quoting *Nippon Hodo Co. v. U.S.*, 285 F.2d 766, 767-68 (Fed. Cl. 1961)). Applying these principles to Section 44(b), Applicant, whose country of origin is not party to a convention or treaty relating to trademarks with the United States, is entitled to the benefits of Section 44 if the British Virgin Islands extends to U.S. nationals the same opportunity to claim a priority date based on a foreign-filed application.

Section 43 of the VITMA,[7] titled "Claim to priority," states, in relevant part:

(1) A person who has duly filed an application for the registration of a trade mark in a Paris Convention country (the "Convention application") or WTO member (the "WTO application"), or his successor in title, has a right of priority, for the purposes of registering the same trade mark under the Act for some or all of the same goods or services, for a period of six months from the date of filing of the first such application.

(2) Where the application for registration under this Act is made within the six-month period referred to in subsection (1) –

---

[7] Applicant attached an exhibit to its cross-motion for summary judgment showing subsections 1 and 3 of the VITMA. 23 TTABVUE 642. Applicant also attached a copy of the VITMA to a prior filing. 11 TTABVUE 19-107. We note that Fed. R. Civ. P. 44.1 allows the Board to ascertain foreign law through any relevant material or source, including the Board's own research. *See* Fed. R. Civ. P 44.1; *see also Animal Sci. Prods.,* 585 U.S. at 42. We have considered the version of the VITMA provided by the website for the British Virgin Islands Financial Services Commission at https://www.bvifsc.vg/library/legislation/trade-marks-act-revised-2020 (last visited Nov. 21, 2025).

(a) The relevant date for the purposes of establishing which rights take precedence shall be the date of filing of the first Convention application or WTO application, as the case may be; and

(b) The registrability of the trade mark shall not be affected by any use of the mark in the Virgin Islands in the period between that date and the date of the application for registration under this Act.

(3) Any filing of an application for registration of a trade mark in, or in respect of, a Paris Convention country or WTO member which, under the laws of that country or member or under any bilateral or international agreement to which it is a party, is equivalent to a regular national filing, shall be treated as giving rise to a right of priority.

(4) A subsequent application for registration of a trade mark that was the subject of a previous application and that is filed in a Paris Convention country or WTO member, shall be considered as the first application for the purpose of determining priority if, on the date of filing of the subsequent application –

(a) The previous application has been withdrawn, abandoned or refused, without having been laid open to public inspection and without leaving any rights outstanding; and

(b) It has not yet served as a basis for claiming a right of priority.

(5) The previous application referred to in subsection (4) may not thereafter serve as a basis for claiming a right of priority.

In summary, the VITMA affords any person seeking a registration in the British Virgin Islands the right to claim a priority date based on its first application filed in a country that is party to the Paris Convention or a WTO member if the person files in the British Virgin Islands within six months of such an application. Because the law does not set forth a limit with respect to a person's country of origin, it affords U.S. nationals who satisfy its other requirements the opportunity to assert a priority right.

Trademark Act Section 44(d) similarly affords a person whose country of origin is an eligible country the right to claim a priority date based on the filing date of its first application in an eligible country if the person files in the United States within six months of such an application. The foreign application filing date is afforded the same force and effect as if it were filed in the United States on the same date, meaning the filing date of the foreign application establishes a priority right that is not affected by any use in the United States taking place after the filing date of the foreign application. *See* Trademark Act § 7(c), 15 U.S.C. § 1057(c).

The VITMA thus extends priority rights to U.S. nationals reciprocal to those extended by Trademark Act Section 44(d) to foreign nationals. Both countries extend to foreign applicants a right to a priority date based on a foreign application, filed in an eligible country, as long as the foreign applicant files within six months of the first such foreign application.

Although there may be some differences in the statutes, reciprocity does not require that all specifics of the statutes or procedures of the countries be identical. *Cf. Gal-Or*, 113 Fed. Cl. at 551 (stating that the Reciprocity Act, "only requires that: 'American citizens enjoy an equal standing with foreigners in actions against the foreign State and does not require that the scope of actions for which the respective countries render themselves liable to suit shall be coextensively identical and in pari material.'") Rather, Trademark Act Section 44(b) only requires reciprocity in the rights extended. And here, the priority rights are reciprocal notwithstanding the differences in the laws, such as the VITMA's limiting eligible countries to those party

to the Paris Convention and WTO members and Trademark Act Section 44(b)'s requirements of the applicant's country of origin. Thus, VITMA Section 43 extends to U.S. nationals the same opportunity to claim a priority date in the British Virigin Islands based on a foreign-filed application as British Virgin Islands nationals have in the United States under Trademark Act Section 44(d).

Opposer's argument that the VITMA does not extend reciprocal rights to U.S. nationals because "it merely establishes domestic procedures for handling applications within BVI's own territory rather than extending any rights to U.S. nationals seeking protection in the United States" is not well taken. 25 TTABVUE 8. To the contrary, given that Trademark Act Section 44(d) extends a priority right to foreign applicants in the United States, reciprocity requires that the foreign nation extend a priority right to U.S. nationals in that foreign nation. *See In re Fisons Ltd.*, 1978 TTAB LEXIS 7, at *11 n.6 (TTAB 1978) ("The statute clearly means that if a foreign country extends rights to nationals of the United States, we extend reciprocal rights to nationals of that foreign country."). In a footnote to that argument, Opposer further argues that "[a] foreign country establishes reciprocity with the United States by declaring in its laws that U.S. nationals will receive certain rights in the foreign country's system AND that the foreign country intends for its nationals to receive comparable rights in the U.S." 25 TTABVUE 8 n.1. Opposer offers no authority to support its assertion that these two elements are required to establish reciprocity. In other contexts, the concept of reciprocity does not require a foreign nation's laws to declare either that U.S. nationals will receive rights or that the law intends for the

15

foreign nation's nationals to receive comparable rights in the U.S. *See, e.g., Ferreiro,* 350 F.3d at 1322 (holding that reciprocity required only a showing that "American citizens may sue the foreign sovereign on the same terms as native citizens"). Similarly, Trademark Act Section 44 is focused on whether the foreign law extends reciprocal rights to U.S. nationals. Because the British Virgin Islands extends a reciprocal priority right to U.S. nationals, Applicant is entitled to the priority date under Trademark Act Section 44(d) based on its European Union application.

### 3. Evidence of Opposer's Prior Proprietary Rights

Opposer submitted evidence to show that it first used its marks in commerce on March 4, 2022. 21 TTABVUE 12. Whether or not Opposer's evidence is sufficient to establish March 4, 2022 as its first use date, that date is after Applicant's December 2, 2021 priority date. Thus, Opposer has failed to show there is no genuine dispute of material fact that Opposer has prior proprietary rights in its pleaded marks. Accordingly, Opposer's motion for summary judgment is **denied**.

In view of Opposer's claimed March 4, 2022 priority date, Applicant's valid claim to December 2, 2021 as its priority date sufficiently discharges Applicant's burden to show that there is an absence of evidence showing that Opposer has prior proprietary rights. *See Celotex Corp.,* 477 U.S. at 325. Given Opposer's lack of evidence showing it has proprietary rights in its mark prior to December 2, 2021, and its concession that it only would have prior rights if Applicant's claim of a priority date were invalid, Opposer has failed to show a genuine dispute of material fact as to priority. Because prior proprietary rights are an essential element of the likelihood of confusion claim,

Opposer cannot succeed on the claim as a matter of law. *See Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 (Fed. Cir. 2002). Applicant's cross-motion for summary judgment is **granted** subject to Applicant's establishment of constructive use. 15 U.S.C. § 1068 ("[N]o final judgment shall be entered in favor of an applicant under [S]ection 1051(b) of this title before the mark is registered, if such applicant cannot prevail without establishing constructive use pursuant to [S]ection 1057(c) of this title."); 15 U.S.C. § 1057(c)(3); Trademark Rule 2.129(d), 37 C.F.R. § 2.129(d) ("When a party to an inter partes proceeding before the Trademark Trial and Appeal Board cannot prevail without establishing constructive use pursuant to section 7(c) of the Act in an application under section 1(b) of the Act, the Trademark Trial and Appeal Board will enter a judgment in favor of that party, subject to the party's establishment of constructive use."); *Larami Corp. v. Talk To Me Programs Inc.*, No. 91085987, 1995 TTAB LEXIS 13, at *14 n.7 (TTAB 1995) ("Section 7(c) provides that any judgment entered in favor of a party relying on constructive use . . . is contingent upon the ultimate issuance of a registration to that party.").

**Decision**

Judgment in favor of Applicant dismissing the opposition is hereby entered, contingent upon Applicant's establishment of constructive use in Application Serial No. 97432801.[8]

---

[8] Applicant is ordered to inform the Board within twenty days of the registration or abandonment of Application Serial No. 97432801.

"The time for filing an appeal or for commencing a civil action under Section 21 of the Act shall run from the date of the entry of judgment." Trademark Rule 2.129(d).